**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE: IN THE MATTER OF TEXAS**　　　　**CIVIL ACTION**
**PETROLEUM INVESTMENT COMPANY**

　　　　　　　　　　　　　　　　　　　　　　**NO. 24-2344**

　　　　　　　　　　　　　　　　　　　　　　**SECTION: D (2)**

## ORDER AND REASONS

Before the Court is a Motion for Leave to Amend Responsive Pleading to Add Borrowed Servant Defense, filed by The Production Group, LLC and David Hayes ("Movants").[1] Texas Petroleum Investment Company ("Petitioner"), the owner of Vessel LA 9395, opposes the Motion,[2] and George Walcott and Evelyn Walcott have adopted Petitioner's arguments in opposing the Motion.[3] Movants have filed a Reply.[4] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this case is more fully developed in the Court's prior Order and Reasons.[5] The Court therefore provides the factual and procedural background only as necessary to the instant Motion.  This limitation action emanates from an April 10, 2024 allision involving the Vessel LA 9395 on the inland waters of Plaquemines Parish, Louisiana.[6] David Hayes, an employee of the Production Group,

---

[1] R. Doc. 52.
[2] R. Doc. 59.
[3] R. Doc. 66. For the sake of convenience, the Court solely references Petitioner's Opposition. The Court notes, however, that George Walcott and Evelyn Walcott oppose the Motion for identical reasons as Petitioner.
[4] R. Doc. 69.
[5] R. Doc. 91.
[6] R. Doc. 1.

was operating the Vessel LA 9395 when it struck a submerged hazard, allegedly injuring George Walcott – a Taylors International Services employee.[7] On September 26, 2024, Petitioner filed a Verified Complaint for Exoneration from or Limitation of Liability.[8]

George Walcott and Evelyn Walcott, on May 14, 2025, filed a crossclaim against Movants asserting that The Production Group, LLC is vicariously liable for David Hayes' allegedly negligent conduct.[9] George Walcott and Evelyn Walcott also asserted claims against The Production Group, LLC for negligent hiring, training, and supervision of David Hayes.[10] In response, on July 10, 2025, Movants filed an Answer and Third-Party Complaint of The Production Group, LLC and David Hayes ("Answer to Cross-Claim").[11] Movants did not assert the borrowed servant affirmative defense in their Answer to Cross-Claim.[12]

On April 23, 2025, the Court issued a Scheduling Order establishing a May 23, 2025 deadline for all parties to file any amendments to their pleadings.[13] Shortly thereafter, on June 23, 2025, George Walcott was deposed.[14] Giving rise to the instant

---

[7] R. Doc. 52-2 at p. 2.
[8] R. Doc. 1. George Walcott and Evelyn Walcott filed an Original Petition for Damages in Plaquemines Parish, Louisiana on October 1, 2024. R. Doc. 59-1. The state court suit has been stayed pursuant to the Court's September 30, 2024 Order Directing Issuance of Notice and Restraining Prosecution of Claims. R. Doc. 4.
[9] R. Doc. 38.
[10] Id.
[11] R. Doc. 40.
[12] See id. at pp. 4–5.
[13] R. Doc. 21. At the time the instant Motion was filed, the Court's April 23, 2025 Scheduling Order was in effect. Although the Court has issued various Amended Scheduling Orders as of the date of this Order and Reasons, the May 23, 2025 deadline for amendments to pleadings has never changed. The Court's August 8, 2025 Amended Scheduling Order (R. Doc. 70) is the controlling Scheduling Order as of the date of this Order and Reasons.
[14] R. Doc. 52-5.

Motion, George Walcott testified that David Hayes operated Vessel LA 9395 – a vessel owned by Petitioner – on a regular basis.[15] George Walcott specifically testified as follows:

> Q  So you get on the boat around 5, I think you told us?
> A  Yes, sir.
> Q  And who else was in the boat with you, do you remember?
> A  Mr. Dave[16] was in the boat.
> Q  Mister who?
> A  Mr. Dave.
> Q  Dave, okay. Who else?
> A  He was in the boat. Mr. Tommy was in the boat, and Mr. Blake was in the boat, and myself.
> Q  Was that a usual ride, usual number of people to make the trip back to the dock?
> A  Yes, sir.
> Q  And who was driving the boat?
> A  Mr. Dave.
> Q  And had you been in the boat before when he drove the boat?
> A  Yes, sir.
> Q  How many times; many times?
> A  Many times, yes, sir.[17]
>                            ***
> Q  Besides Mr. Dave, when you were in the boat, and Mr. Dave was in the boat, didn't anybody else ever drive the boat besides Mr. Dave?
> A  On different crew changes, when they had another personnel in there that was driving the boat.
> Q  But not --
> A  Mr. Blake never drove the boat, and Mr. Tommy never drove the boat.
> Q  Okay.
> A  But we have had different operators drive the boat.
> Q  But when Mr. Dave was in the boat, was he the one who was driving the boat?
> A  Yes, sir.
> Q  And do you know what Mr. Dave's job was on the platform?
> A  A production operator.
> Q  Did you ever talk to Mr. Dave about why he was the one who

---

[15] Id.; R. Doc. 52-2 at p. 2.
[16] Mr. Dave refers to David Hayes.
[17] R. Doc. 52-5 at p. 2.

would be driving the boat?

A    No, sir, that was like normal procedure for them.[18]

Movants filed the instant Motion for Leave to Amend Responsive Pleading to Add Borrowed Servant Defense on July 10, 2025.[19] Movants seek to assert the borrowed servant defense to "posit[] that Mr. Hayes, TPG's payroll employee, acted as a borrowed servant of [P]etitioner . . . at all relevant times, thereby shielding TPG of vicarious liability for his alleged negligence."[20] Movants argue that the Court should grant them leave to amend their Answer to Cross-Claim[21] for three reasons.[22] First, good cause exists under Fed. R. Civ. P. 16(b) to modify the lapsed amendment deadline in the Court's Amended Scheduling Order.[23] Movants specifically allege that "[t]he Fifth Circuit's four-factor test for good cause under Rule 16(b) supports granting this Motion."[24] Second, Fed. R. Civ. P. 15(a) dictates that leave to amend should be freely granted absent a substantial reason, and no substantial reason exists in the underlying matter.[25] Third, Fed. R. Civ. P. 8(c) does not preclude their requested amendment, as all parties have substantial time to respond thereby providing fair notice to all parties.[26]

Petitioner opposes the instant Motion.[27] According to Petitioner, the four factors enumerated by the Fifth Circuit in determining whether good cause exists

---

[18] *Id.* at pp. 3–4.
[19] R. Doc. 52.
[20] R. Doc. 52-2 at p. 1.
[21] R. Doc. 40.
[22] R. Doc. 52-2 at pp. 3–7.
[23] *Id.* at p. 3.
[24] *Id.* at p. 4.
[25] *Id.* at p. 5.
[26] *Id.* at pp. 7–8.
[27] R. Doc. 59.

under Fed. R. Civ. P. 16(b) all support denying the instant Motion.[28] Thus, according to Petitioner, the Motion should be denied.[29] Movants have filed a Reply.[30] In their Reply, Movants claim that "TPG's motion to amend is warranted and satisfies both Rule 16(b)'s good cause standard and Rule 15(a)'s liberal amendment policy."[31]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) governs the amendment of pleadings and provides that, "[t]he court should freely grant leave when justice so requires."[32] While Rule 15 espouses a liberal policy regarding amendments, the Fifth Circuit has made clear that granting leave to amend "is by no means automatic[.]"[33] Instead, "the decision to grant or to deny a motion for leave to amend lies within the sound discretion of the trial court."[34]

Additionally, the Fifth Circuit has made clear that, "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[35] The Fifth Circuit has further held that, "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met

---

[28] R. Doc. 59 at p. 5.
[29] *Id.*
[30] R. Doc. 69.
[31] *Id.* at p. 6.
[32] Fed. R. Civ. P. 15(a)(2).
[33] *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981) (citation omitted).
[34] *Id.* (citation omitted).
[35] *S&W Enterp., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).

despite the diligence of the party needing the extension.'"[36]  Courts consider the following four factors in determining whether good cause exists: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure the prejudice.[37]

## III.    ANALYSIS

In the instant Motion, Movants seek leave to amend their Answer to Cross-Claim[38] nearly two months after the deadline for filing amendments to pleadings in the Court's Amended Scheduling Order.[39] As such, Movants must show that good cause exists under Fed. R. Civ. P. 16(b) to modify the Court's Amended Scheduling Order. For the reasons set forth below, the Court finds that Movants have demonstrated good cause to alter the Court's Amended Scheduling Order pursuant to Rule 16(b) and that Rule 15(a) and Rule 8(c) dictate that Movants be granted leave to amend.

### A.    Good cause exists under Fed. R. Civ. P. 16(b) to modify the Court's Amended Scheduling Order.

As noted, the Fifth Circuit has enumerated four factors in determining whether good cause exists under Rule 16(b). The Court takes each factor in turn.

---

[36] *Id.* at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).
[37] *S&W Enterp., L.L.C.*, 315 F.3d at 536.
[38] R. Doc. 40.
[39] R. Doc. 21; R. Doc. 52.

*1. The explanation for the failure to timely move for leave to amend*

Movants allege that there is a reasonable expectation of for the delay because "the applicability of the borrowed servant defense crystalized after Mr. Walcott's deposition on June 23, 2025, when he testified that Mr. Hayes—a TPG production operator—regularly operated TPIC's vessel, thus suggesting TPIC's control over his actions."[40] Petitioner, in turn, contends that Movants' assertion is questionable given George Walcott and Evelyn Walcott's state court petition filed on October 1, 2024.[41] Specifically, Petitioner avers that "[t]he State Court Petition includes numerous allegations advanced against Mr. Hayes, as operator of the vessel involved in the accident. Mr. Hayes was, at that time, a direct employee of TPG and, as far as the undersigned is aware, remains a TPG employee as of this date."[42] Thus, according to Petitioner, Movants "had more opportunity than any party in this suit to determine Mr. Hayes' potential status as a borrowed servant of TPIC, [and] to suggest that there is no 'undue delay' in asserting the borrowed servant defense is subject to question."[43]

In Reply, Movants posit that the borrowed servant doctrine "involves a fact intensive inquiry into nine factors, including the borrowing employer's control, the employee's acquiescence, and the provision of tools and supervision. While TPG knew Mr. Hayes was its payroll employee, the defense's viability still hinged, in large part, on evidence of TPIC's operational control over Mr. Hayes. This evidence emerged during Mr. Walcott's deposition, when his testimony indicated Mr. Hayes' vessel

---

[40] R. Doc. 52-2 at p. 3.
[41] R. Doc. 59 at p. 5.
[42] *Id.* (emphasis removed).
[43] *Id.*

operation was a routine function under TPIC's direction."[44] Thus, according to Movants, they "acted quickly, filing its motion within three weeks[]" of discovering this new information.[45]

The Court finds that there is a reasonable explanation for the delay. As correctly noted by Movants, the borrowed servant defense is highly fact intensive. In determining borrowed employee status, the Fifth Circuit instructs district courts to examine nine factors.[46] Additionally, as explained by another Section of this Court, "[n]ewly discovered information acquired through discovery has been found by courts in this circuit to constitute good cause for an untimely leave to amend under Rule 16."[47]

Here, in the deposition of George Walcott, Movants discovered facts underlying the potential borrowed servant affirmative defense. While it is plausible that Movants could have realized the potential viability of the borrowed servant affirmative defense from the October 1, 2024 state court petition, the Court does not find it unreasonable that Movants waited for an adequate factual basis to assert the affirmative defense.[48] Because, through no fault of their own, Movants discovered a

---

[44] R. Doc. 69 at p. 2.

[45] *Id.*

[46] *Meaux v. Cooper Consolidated, LLC*, 477 F.Supp.3d 515, 530 (E.D. La. 2020)(Ashe, J.)(citing *Mays v. Director, Office of Workers' Comp. Programs*, 938 F.3d 637, 641–42 (5th Cir. 2019)).

[47] *Rivera v. Robinson*, CIVIL ACTION NO: 18-14005, 2019 WL 4024939, at *2 (E.D. La. Aug. 27, 2019)(Lemmon, J.)

[48] *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542 (1991)(stating that when an attorney signs a pleading, the "signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive[]").

factual basis to assert the borrowed servant affirmative defense after the amendment deadline, this factor weighs in favor of finding good cause.

    2.  *The importance of the amendment*

Movants state that "the amendment is critical to TPG's defense. The borrowed servant doctrine, if established, could absolve TPG of vicarious liability by potentially attributing Mr. Hayes' alleged negligence to TPIC. The Walcotts' cross-claim seeks considerable damages based on Mr. Hayes' alleged actions. Arguably, without this defense TPG faces potential liability for conduct it did not direct, undermining a fair resolution."[49] Petitioner disagrees, stating that "TPG is seeking to shift any responsibility for his conduct onto TPIC. Of course, if TPG is not allowed to seek to have Mr. Hayes declared a borrowed servant of TPIC, then, TPG as his real employer, would bear responsibility for his conduct. For that reason, the amendment is just as 'important' to TPIC as it is to TPG."[50] Movants, in Reply, contend that "TPIC's attempt to neutralize this factor by invoking its own interests misreads the inquiry, which focuses on the amendment's significance to the movant and the case's overall fairness, not a comparative weighing of adversarial interests."[51]

The Court finds significant importance in the proposed amendment. As explained by Movants, allowing amendment for asserting the borrowed servant defense would potentially have a significant impact on which party is liable for David Hayes' conduct.[52] The potential fact that the borrowed servant affirmative defense

---

[49] R. Doc. 52-2 at p. 4.
[50] R. Doc. 59 at p. 6.
[51] R. Doc. 69 at p. 3 (emphasis removed).
[52] R. Doc. 52-2 at p. 4.

may shift liability upon parties does not minimize the amendment's importance. In fact, potential liability shifting demonstrates the importance of the amendment. Thus, this factor weighs in favor of finding good cause to amend the Court's Amended Scheduling Order.

### 3. The potential prejudice in allowing the amendment

Movants claim that "the amendment will not prejudice the Walcotts or TPIC. The defense rests on issues already in the record—Mr. Hayes' employment and operation of TPIC's vessel—and known to the parties."[53] Further, Movants posit that "[w]hile TPIC may oppose the motion, it cannot show unfair prejudice. The borrowed servant doctrine is not an unanticipated theory in maritime employer and contractor disputes, and it is rooted in longstanding Fifth Circuit precedent."[54] Petitioner, in Opposition, states that "prejudice has already been occasioned to TPIC. This is because had the undersigned known a borrowed servant defense was to be asserted by TPG, the undersigned would have questioned, Mr. Walcott at length, at his recent deposition concerning his potential borrowed servant status, so as to set up a 'co-borrowed employee' defense."[55] According to Petitioner, "[t]his is exactly the type of defense anticipated by Rule 8(c) which must be asserted as an affirmative defense in responsive pleading such as TPG's answer to the Walcott's Cross-Claim."[56]

---

[53] R. Doc. 52-2 at p. 4.
[54] *Id.*
[55] R. Doc. 59 at p. 6 (emphasis removed).
[56] *Id.* (emphasis removed).

Movants, in Reply, advance three arguments.[57] First, they allege that Petitioner fails to offer a concrete basis for the co-borrowed employee defense.[58] Second, Movants contend that even assuming *arguendo* that the co-borrowed employee defense is meritorious, Petitioner may seek discovery on this issue.[59] Lastly, Movants suggests that "the mere fact that one affirmative defense (borrowed servant) could later give rise to another (co-borrowed employee) does not amount to legal prejudice."[60]

The Court finds the potential prejudice in allowing amendment is low. Trial is currently set for May 18, 2026, and the discovery deadline is March 2, 2026.[61] This gives Petitioner ample time to revise its litigation strategy in light of amendment, if necessary. Petitioner is also free to propound discovery within the rules set forth in the Federal Rules of Civil Procedure on the issue of a potential co-borrowed employee affirmative defense.[62]

### 4. *The availability of a continuance to cure any prejudice*

Movants advance that "any theoretical prejudice can be addressed by a continuance."[63] Petitioner, in turn, asserts that prejudice has already occurred and that "whether a continuance is granted by the Court or not, it really would make no difference in connection with the issues posed by TPG's Motion to Amend to add the

---

[57] R. Doc. 69.
[58] *Id.* at p. 4.
[59] *Id.*
[60] *Id.* at p. 5.
[61] R. Doc. 70.
[62] The Court recognizes that it may be necessary for Petitioner to seek leave to propound additional discovery.
[63] R. Doc. 52-2 at p. 5.

'borrowed servant' defense."[64] The Court disagrees.  As noted herein, discovery remains ongoing in this matter; trial is not set until May 18, 2025.[65] Thus, there remains ample opportunity for additional discovery on this issue without impacting the trial date.

Accordingly, the Court finds that all four factors weigh in favor of finding good cause exists under Rule 16(b). Having found good cause exists under Rule 16(b) to modify the Court's Amended Scheduling Order, the Court next addresses whether leave to amend should be granted  under Rule 15(a).

## B.    Rule 15(a) dictates that Movants be granted leave to amend their Answer to Cross-Claim.

Movants allege that, under Rule 15(a), "[l]eave to amend should be freely granted unless a substantial reason, such as undue delay, bad faith, repeated failure to cure, undue prejudice, or futility, exists. No such reason is present here."[66] Petitioner does not address Rule 15(a) in its Opposition,[67] nor do Movants in their Reply.[68] The Court agrees with Movants.

Rule 15(a)(2) provides "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[69] The Fifth Circuit has explained that "Rule 15(a) evinces a bias in favor of granting leave to amend. Its purpose is to assist

---

[64] R. Doc. 59 at p. 7.
[65] R. Doc. 70.
[66] R. Doc. 52-2 at p. 5.
[67] *See* R. Doc. 59.
[68] *See* R. Doc. 69.
[69] Fed. R. Civ. P. 15(a)(2).

the disposition of the case on its merits, and to prevent pleadings from becoming ends in themselves."[70] As explained by the Supreme Court:

> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.[71]

Here, because Petitioner has failed to allege any substantial reason – such as undue delay, bad faith, or dilatory motive – as to why leave to amend should not be granted, the Court determines that leave should be granted under Rule 15(a). Additionally, the Court independently sees no reason as to why leave to amend should be denied. Thus, the Court finds that Movants should "be afforded an opportunity to test [their affirmative defense] on the merits."[72] Because Movants seek leave to assert an affirmative defense, the Court next considers amendment in the context of Rule 8(c) below.

## C.    Rule 8(c) does not prohibit Movants' amendment.

Movants allege that "[t]he claims between the Walcotts and movants signaled employment-related defenses, and Mr. Walcott's deposition clarified the basis for the borrowed servant doctrine. This motion, filed less than three weeks later, avoids any

---

[70] *Foster v. Daon Corp.*, 713 F.2d 148, 152 (5th Cir. 1983)(citation modified).
[71] *Foman v. Davis,* 371 U.S. 178, 182 (1962)(citation modified).
[72] *Id.*

unfair surprise."[73] Petitioner, in its Opposition, suggests that Movants' failure to initially plead the affirmative defense bars amendment under Rule 8(c).[74] In Reply, Movants contend that "Fifth Circuit precedent makes clear that an unpled affirmative defense may still be asserted so long as it is raised at a 'pragmatically sufficient time' and does not result in prejudice."[75] Thus, according to Movants, Rule 8(c) favors granting amendment. The Court agrees.

> The Fifth Circuit has stated that:
>
> Generally, affirmative defenses must be presented in the answer. Even so, if the defense is later presented in a manner that does not result in unfair surprise technical failure to comply precisely with Rule 8(c) is not fatal. The defense may be considered if it was raised at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond.[76]

Here, the Court finds that Movants have attempted to raise the borrowed servant affirmative defense in a pragmatically sufficient time. Movants, only three weeks after the deposition of George Walcott, filed the instant Motion.[77] Moving for leave three weeks after discovering facts giving rise to an affirmative defense is not unreasonable.[78] Further, Petitioner is not prejudiced in its ability to respond. The discovery cutoff is currently March 2, 2026, and trial is currently set for May 18,

---

[73] R. Doc. 52-2 at p. 7.

[74] R. Doc. 59 at pp. 3–4.

[75] R. Doc. 69 at p. 5.

[76] *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 553 (5th Cir. 2013)(citation modified).

[77] R. Doc. 52; R. Doc. 52-5.

[78] *See Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009)("[W]e look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial. *See Giles v. Gen. Elec. Co.,* 245 F.3d 474, 492 (5th Cir.2001) (finding no waiver where a new affirmative defense was raised in a joint pretrial order over a year after complaint was filed); *Lubke v. City of Arlington,* 455 F.3d 489, 499 (5th Cir.2006) (finding no waiver where a defense was raised in a pretrial motion in limine two years after the complaint was filed and just weeks before trial) . . . .").

2026.[79] The Court, as noted, is receptive to receiving any arguments as to why a continuance of non-lapsed deadlines in the Amended Scheduling Order[80] is necessary, thereby curing any theoretical prejudice. Therefore, considering the borrowed servant affirmative defense is supported under Rule 8(c).

Accordingly, for the reasons set forth above, Rule 16(b) supports finding good cause to modify the Court's Amended Scheduling Order. Rule 15(a) and Rule 8(c) both support granting Movants' request for leave to amend their Answer to Cross-Claim. Because "[t]he policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading[,]" the Court refuses to deny Movants leave to amend based on technical deficiencies.[81] Leave is granted.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion for Leave to Amend Responsive Pleading to Add Borrowed Servant Defense[82] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Amended Answer and Third Party Complaint of The Production Group, LLC and David Hayes[83] be filed into the record.

New Orleans, Louisiana, January 5, 2026.

*Wendy B Vitter*

**WENDY B. VITTER**
**United States District Judge**

---

[79] R. Doc. 70.
[80] *Id.*
[81] *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).
[82] R. Doc. 52.
[83] R. Doc. 52-3.