**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: IN THE MATTER OF TEXAS PETROLEUM INVESTMENT COMPANY** | **CIVIL ACTION**<br><br>**NO. 24-2344**<br><br>**SECTION: "D" (2)** |

ORDER AND REASONS

Before the Court is a Motion in Limine, filed by Texas Petroleum Investment Company ("TPIC").[1] George Walcott and Evelyn Walcott ("Walcott Claimants") have filed an opposition to the Motion.[2] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In a previous Order and Reasons,[3] the Court has set forth the factual background in this matter. The Court, however, will briefly recite the factual allegations as pertinent to the instant Motion.

This limitation action arises out of an early morning April 10, 2024 allision involving TPIC's Vessel LA 9395[4] on the inland waters of Plaquemines Parish, Louisiana (the "allision").[5] On April 10, 2024, at approximately 5:20 a.m., the Vessel departed TPIC's South Pass 24 platform ("SP-24") as a part of a crew change run to Venice, Louisiana.[6] George Walcott, a catering hand employed by Taylors

---

[1] R. Doc. 173.
[2] R. Doc. 181. TPIC did not file a reply memorandum in support of the instant Motion.
[3] R. Doc. 91.
[4] Vessel La 9395 is also referred to as the M/V SYDNEY. The Court will refer to it as the "Vessel" throughout this Order and Reasons.
[5] R. Doc. 173-2 at p. 1.
[6] R. Doc. 181.

International Services, Inc., was a passenger on the Vessel at the time of the allision.[7] The vessel was being operated by David Hayes, a production operator employed by The Production Group, LLC.[8] On the voyage to Venice, the Vessel struck a submerged hazard, causing bodily injuries to George Walcott.[9]

Six days later, on April 16, 2024, Tommy Lejeune, a Production Superintendent at TPIC, sent the following email (the "Email") to TPIC field personnel:

> Due to the recent Boat Incident when making crew change the boat is not to leave SP-24 until Day Light. On Foggy days the boat is not to leave until Fog clears. If [f]og doesn't clear I will make crew change with one of our boats that has a Licensed Captain.[10]

During his March 2, 2026 deposition, Tommy Lejeune testified as follows pertaining to the allision and the Email establishing the new instructions (the "Daylight Policy"[11]):

> Well, at the time of the incident, they left the facility and it was dark, and that's when they came out that no more -- no longer are they going to leave the facility at dark. They have to wait until daylight. And they would no longer travel in the fog. They would have to wait until the fog lifted, or I had a licensed boat captain go get them.[12]

Lejuene further testified that fog was not present when the allision occurred.[13]

---

[7] R. Doc. 173-2 at p. 1.

[8] R. Doc. 181 at p. 1.

[9] *Id.* at pp. 1–2.

[10] R. Doc. 173-3 at p. 1.

[11] The Court refers to the Email as the "Daylight Policy" since both TPIC and the Walcott Claimants reference it as such in their briefing. R. Docs. 173 and 181. The Court recognizes that Mr. Lejeune testified that the Email "was just instructions" since he didn't make policies. *See* R. Doc. 181-1 at p. 24. For purposes of this analysis, it is of no moment whether the Email is an official policy or a company-wide instruction.

[12] R. Doc. 181-1 at pp. 25.

[13] *Id.* at p. 29.

TPIC filed the instant Motion in Limine on March 30, 2026.[14] TPIC asks the

Court to exclude any introduction or reference to the Email or the Daylight Policy at

trial.[15] TPIC argues that the Email "is evidence of [a] subsequent remedial measure

and, pursuant to Rule 407 of the Federal Rules of Evidence should be disallowed from

being made part of the record either by way of exhibits or testimonial evidence."[16] As

explained by TPIC:

> Allowing the attached exhibit or testimony relating thereto to be admitted at trial would contradict the purpose of Rule 407. TPIC clearly performed these measures to implement corrective safety procedures that would potentially prevent this type of incident from occurring again. Specifically, the rule that crew transfer only take place during daylight hours is in direct response to the incident involving the allision of the M/V SIDNEY on April 10, 2024, and Mr. Walcott's resulting injury and thus to prevent similar incidents occurring in the future.
>
> . . . .
>
> TPIC is relying on the protections provided under Rule 407 in connection with the attached exhibit. Allowing claimants to introduce this exhibit or elicit testimony from witnesses would allow for the factfinder to infer negligence on the part of TPIC and would essentially punish TPIC for taking additional post-incident steps in furtherance of added safety.[17]

Moreover, TPIC contends that the Walcott Claimants "cannot present a sufficient

reason to submit the subsequent remedial measures as evidence that would fall under

the exceptions to Rule 407 . . . because ownership, control[,] and feasibility are not in

question."[18] Thus, according to TPIC, its Motion in Limine should be granted.[19]

---

[14] R. Doc. 173-2.
[15] *Id.*
[16] *Id.* at p. 2.
[17] *Id.* at pp. 2–3.
[18] *Id.* at p. 3.
[19] *Id.*

The Walcott Claimants oppose the Motion, asserting that although Rule 407 prohibits the introduction of subsequent remedial measures to prove negligence or culpable conduct, Rule 407 permits the admission of subsequent remedial measures for other purposes, such as privity or knowledge of a dangerous condition.[20] According to the Walcott Claimants, they intend to "introduce evidence of TPIC's 'safe daylight' policy change not to prove that nighttime crew changes were inherently negligent, but rather to establish TPIC's privity or *knowledge* of the dangerous conditions (i.e. low visibility) that caused the April 10, 2024 allision—a showing essential to defeating TPIC's claim for limitation."[21]

In support, the Walcott Claimants advance that knowledge is the main issue in TPIC's limitation action, as "a vessel owner may limit its liability to the value of the vessel and pending freight, provided the owner can demonstrate that the loss or injury occurred without its 'privity or knowledge.'"[22] The Walcott Claimants further argue that, because knowledge includes actual and constructive knowledge, whether Tommy Lejeune and corporate supervisors knew or should have known of the dangerous conditions giving rise to the allision "is at the heart of the limitation action's validity."[23] Additionally, the Walcott Claimants contend that the Email implementing the Daylight Policy evinces TPIC's constructive knowledge of the hazardous conditions (i.e., predawn darkness) that gave rise to the allision and the

---

[20] R. Doc. 181 at pp. 3–4.
[21] *Id.* at p. 4 (emphasis original).
[22] *Id.* at p. 4 (quoting *In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008)).
[23] *Id.* at p. 5.

feasibility of implementing the Daylight Policy prior to the allision.[24] As a final point, the Walcott Claimants assert that admission of post-incident safety measures to prove knowledge is consistent with both Fifth Circuit jurisprudence and Rule 407's policy considerations.[25] Thus, according to the Walcott Claimants, the instant Motion should be denied.[26]

## II.    LEGAL STANDARD

According to the Fifth Circuit, the purpose of a motion *in limine* is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[27]

Federal Rule of Evidence 407 governs the admissibility of subsequent remedial measures, in which Rule 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.[28]

---

[24] *Id.* at pp. 5–6.
[25] *Id.* at pp. 6–9.
[26] *Id.* at p. 9.
[27] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted).
[28] Fed. R. Evid. 407.

"The Advisory Committee Notes explain that the primary justification for [R]ule 407 is the 'social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety.'"[29] Rule 407 "also seeks to ensure that negligence is properly determined 'according to what the defendant knew or should have known *prior to the accident,* not what the defendant knew as a result of the accident.'"[30]  "Any evidence not excluded by Rule 407, of course, must still be relevant and its probative value must, under Rule 403, outweigh any dangers associated with its admission."[31]

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[32]  While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[33]

The Fifth Circuit has held that, "[t]he exclusion of evidence under Rule 403 should occur only sparingly."[34]  Additionally, "[r]elevant evidence is inherently

---

[29] *Adams v. Chevron USA, Inc.*, 383 Fed. Appx. 447, 452 (5th Cir. 2010)(quoting Fed. R. Evid. 407, Advisory Committee Note (1972)).

[30] *Id.* (quoting 2 Stephen A. Salzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 407.02[3], at 407–6 (9th ed.2006) (emphasis original)).

[31] *Dixon v. International Harvester Co.*, 754 F.2d 573, 584 (5th Cir. 1985).

[32] Fed. R. Evid. 401.

[33] Fed. R. Evid. 403.

[34] *United States v. Pace*, 10 F.3d 1106, 1115–16 (5th Cir. 1993); *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).

prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[35]    District courts are afforded wide discretion in determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and 402.[36]   A district court's ruling on evidentiary issues is reviewed by an appellate court for an abuse of discretion.[37]   Thus, when the district court conducts "a carefully detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are chary about finding an abuse of discretion."[38]

III.    ANALYSIS

TPIC seeks to exclude the Email and the Daylight Policy pursuant to Rule 407's prohibition on subsequent remedial measures.[39] The Walcott Claimants, in turn, argue that the Email and the Daylight Policy are admissible to prove TPIC's actual or constructive knowledge of dangerous operating conditions.[40] The Court agrees with the Walcott Claimants.

Evidence of subsequent remedial measures is admissible "as proof of subsidiary issues in [a] case, such as knowledge of the dangerous condition or feasibility of precautionary measures."[41] "[T]he key to designating an action as a

---

[35] *Pace*, 10 F.3d at 1115–16 (quotation omitted).
[36] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S.Ct. 1140, 1144–45, 170 L.Ed.2d 1 (2008).
[37] *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).
[38] *Id.*
[39] R. Doc. 173-2.
[40] R. Doc. 181.
[41] *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978). *See Kirkland v. Marriott Intern., Inc.*, 416 F.Supp.2d 480, 489 (E.D. La. 2006)(Vance, J.)("Although Rule 407 prohibits the use of evidence of a defendant's subsequent remedial measures as proof of its negligence, the rule provides that evidence of such remedial measures may be admissible for certain purposes, including impeachment. Impeachment in this sense may include proving defendants' knowledge of the alleged dangerous condition at the time of the accident.")(internal citations omitted).

remedial measure . . . is whether the action would have made an earlier injury or harm less likely to occur."[42]  Evidence is excluded under Rule 407 if three conditions are met:

> First, the evidence must be proof of a remedial measure. Next, had the remedial measure been implemented in time, it would have made the earlier injury or harm at issue in the case less likely to occur. Finally, the evidence is offered to prove either negligence, culpable conduct, a defect in a product or its design, or the need for a warning or other instruction.[43]

"Any evidence not excluded by Rule 407, of course, must still be relevant and its probative value must, under Rule 403, outweigh any dangers associated with its admission."[44]

Here, the Email is the proof of a remedial measure – the Daylight Policy.[45] Second, the Daylight Policy arguably would have made the allision less likely to occur. The Vessel allided with a submerged obstruction in the water during the predawn hours.[46] Thus, had the Daylight Policy been in effect prior to the allision, the operator of the Vessel may have visualized the submerged obstruction in the water and avoided impact with the submerged obstruction.[47] The third element, however, is not satisfied. The Walcott Claimants do not seek to introduce the Email and the Daylight

---

[42] 23 Wright & Miller's Federal Practice & Procedure § 5283 (2d. ed. 2025)(citation modified).
[43] *Id.*
[44] *Dixon*, 754 F.2d at 584.
[45] R. Doc. 173-3. The Court acknowledges that there is no evidence that fog was present when the allision occurred. *See* R. Doc. 181-1 at p. 29. Tommy Lejuene nonetheless testified that the company-wide Email setting forth the Daylight Policy, which addresses scenarios where fog is present, was issued in response to the allision. *See* R. Doc. 181-1 at p. 29.
[46] R. Doc. 173-2 at p. 1.
[47] Insofar as the Daylight Policy pertains to fog, it would not have made the Allision less likely to occur, as fog was not present when the allision occurred. *See* R. Doc. 181-1 at p. 29.

Policy to prove negligence or demonstrate culpable conduct attributable to TPIC.[48] Therefore, the Court finds that Rule 407 does not bar the admission of the Email and the Daylight Policy.

Nor does Rule 403 prohibit admitting evidence of the Email and the Daylight Policy at this bench trial. Insofar as TPIC argues that the Walcott Claimants seek to impermissibly "influence the factfinder as to TPIC's negligence[,]" the Court is unpersuaded.[49] There is no danger of prejudice in this bench trial. As explained by the Fifth Circuit:

> The exclusion of this evidence under Rule 403's weighing of probative value against prejudice was improper. This portion of Rule 403 has no logical application to bench trials. Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of "unfair prejudice" is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision.[50]

Indeed, as noted by the Walcott Claimants, the Court "is more than equipped to selectively apply evidence about 'safe daylight' to the appropriate factual inquiry—i.e. privity and knowledge as opposed to negligence so as to stay within the bounds of FRE 407."[51] Further, the Court finds that TPIC's knowledge, whether actual or constructive, is a disputed, relevant issue for TPIC's limitation claim.[52]

---

[48] R. Doc. 181 at p. 9.

[49] R. Doc. 173-2 at p. 3.

[50] *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981).

[51] R. Doc. 181 at p. 9.

[52] *See In re Hellenic Inc.*, 252 F.3d 391, 394 (5th Cir. 2001)("Under the [Limited Liability] Act, a party is entitled to limitation only if it is without privity or knowledge of the cause of the loss." (citation modified)).

Accordingly, the Court finds that neither Rule 407 nor Rule 403 bar the admission of the Email and the Daylight Policy in this bench trial. To the extent that a witness may seek to impute negligence and culpable conduct upon TPIC through the Email and the Daylight Policy, the Court will appropriately disregard such conclusions.

## IV.    CONCLUSION

For the above reasons, **IT IS HEREBY ORDERED** that the Motion in Limine[53] is **DENIED.**

New Orleans, Louisiana, April 30, 2026.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[53] R. Doc. 173.