**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE: IN THE MATTER OF TEXAS**        **CIVIL ACTION**
**PETROLEUM INVESTMENT COMPANY**

                                             **NO. 24-2344**

                                           **SECTION: "D" (2)**

## REASONS FOR ORDER

Before the Court is a Motion for Partial Summary Judgment on Borrowed Servant Status, filed by The Production Group, LLC and David Hayes ("TPG Claimants").[1] Claimants George Walcott and Evelyn Walcott ("Walcott Claimants") have filed an opposition.[2] Texas Petroleum Investment Company ("TPIC") has also filed an opposition.[3] The TPG Claimants have filed a reply to both the Walcott Claimants' opposition[4] and TPIC's opposition.[5]

Also before the Court is TPIC's Motion for Summary Judgment.[6] The Walcott Claimants have filed an opposition,[7] and TPIC has filed a reply.[8]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTED** the TPG Claimants' Motion for Partial Summary Judgment on Borrowed Servant Status and **DENIED** TPIC's Motion for

---

[1] R. Doc. 143.
[2] R. Doc. 179.
[3] R. Doc. 182.
[4] R. Doc. 186.
[5] R. Doc. 187.
[6] R. Doc. 146.
[7] R. Doc. 180.
[8] R. Doc. 184.

Summary Judgment during the Pretrial Conference in this matter.[9] These Reasons for Order follow.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In a previous Order and Reasons,[10] the Court has set forth the factual background in this matter. The Court, however, will briefly recite the factual allegations as pertinent to the instant Motion.

This limitation action arises out of an early morning April 10, 2024 allision involving TPIC's Vessel LA 9395[11] on the inland waters of Plaquemines Parish, Louisiana (the "allision").[12] TPIC owned and operated South Pass 24 ("SP-24"), an oil and gas production platform situated in Plaquemines Parish, Louisiana.[13] As a part of a routine crew-change, the Vessel departed TPIC's SP-24 in the predawn hours to travel to Venice, Louisiana.[14] David Hayes, a production operator employed by The Production Group, LLC, operated the vessel, and George Walcott, a catering hand/cooking steward employed by Taylors International Services, Inc., was a passenger in the Vessel.[15] While in route to Venice, the Vessel allided with a submerged obstruction, allegedly injuring George Walcott.[16]

---

[9] *See* R. Doc. 204.
[10] R. Doc. 91.
[11] Vessel La 9395 is also referred to as the M/V SYDNEY. The Court will refer to it as the "Vessel" throughout this Order and Reasons.
[12] R. Doc. 143-3 at p. 1.
[13] *Id.*
[14] *Id.*
[15] *Id.*; R. Doc. 146-3 at p. 1.
[16] R. Doc. 143-3 at p. 1.

**A. The TPG Claimants' Motion for Partial Summary Judgment on Borrowed Servant Status**

On March 16, 2026, the TPG Claimants filed the instant Motion for Partial Summary Judgment on Borrowed Servant Status.[17] The TPG Claimants ask the Court to "enter judgment recognizing that Hayes was TPIC's borrowed servant at the time of the incident at issue."[18] The TPG Claimants contend that, "[a]pplying the *Ruiz* factors to the undisputed facts of this case, the evidence overwhelmingly demonstrates that David Hayes was acting as TPIC's borrowed servant at the time of the incident."[19] Thus, because all nine *Ruiz* factors weigh in favor of borrowed servant status, the TPG Claimants assert that they are entitled to judgment as a matter of law.[20]

The Walcott Claimants have filed an opposition, asserting that the TPG Claimants' Motion should be denied because genuine issues of material fact exist regarding most of the *Ruiz* factors.[21] Specifically, the Walcott Claimants argue that "[t]he disputed *Ruiz* factors cannot be resolved on summary judgment—credibility determinations and conflicting documentary and testimonial evidence require trial. The MSA expressly disclaims any employment relationship between TPIC and Hayes, which severely undermines any claim that TPIC intended to borrow him as

---

[17] R. Doc. 143.
[18] R. Doc. 143-2 at p. 19.
[19] *Id.* at p. 6.
[20] *Id.* at p. 19.
[21] R. Doc. 179.

an employee."[22] Thus, the Walcott Claimants contend that the TPG Claimants' Motion should be denied.[23]

TPIC has also filed an opposition.[24] TPIC concedes that David Hayes' "relationship with TPIC and TPG satisfies a number of the Ruiz factors . . . ."[25] TPIC contends that "[t]he only factor where there appears to be an issue as to that status for both Mr. Hayes and Mr. Walcott is the first *Ruiz* factor, which addresses control over the employee."[26] Beyond the first *Ruiz* factor, TPIC concedes that the other *Ruiz* factors "are essentially undisputed both as to Mr. Hayes and Mr. Walcott."[27]

The TPG Claimants filed a Reply to the Walcott Claimants' opposition.[28] The TPG Claimants argue that:

> 1) The terms of an MSA do not override the Firth [sic] Circuit's controlling test in *Ruiz;* 2) Plaintiffs do not create a genuine dispute as to control; 3) their purported material factual disputes are neither disputed nor material; and 4) the factors they claim are 'neutral' or lean in their favor all decidedly favor borrowed servant status.[29]

The TPG Claimants have likewise filed a Reply to TPIC's opposition.[30] The TPG Claimants argue that:

> TPIC relies on a selected excerpt from Hayes's deposition that shows, at most, that Hayes worked the opposite watch of his TPIC supervisors and exercised routine judgment during nighttime operations unless a matter became serious enough to require escalation. That selective excerpt does

---

[22] *Id.* at p. 13.
[23] *Id.*
[24] R. Doc. 182.
[25] *Id.* at p. 2.
[26] *Id.*
[27] *Id.* at p. 4.
[28] R. Doc. 186.
[29] *Id.* at p. 1.
[30] R. Doc. 187

not conflict with TPIC's admissions as to control and is insufficient to create a genuine issue of material fact.[31]

Therefore, according to the TPG Claimants, they are entitled to judgment as a matter of law on their Motion.[32]

### B.  TPIC's Motion for Summary Judgment

TPIC filed the instant Motion for Summary Judgment on March 16, 2026, seeking an order finding that George Walcott was "a borrowed servant/statutory employee of TPIC . . . ."[33] TPIC asserts that:

> [T]here exists no real factual dispute that Mr. Walcott meets all of the requirements to be characterized as a borrowed employee of TPIC. Furthermore, the decision by Taylors' compensation carrier to provide Mr. Walcott LHWCA benefit does not legally foreclose the fact that he is, in truth, an LWC employee thereby invoking the statutory employee provisions of the TPIC/Taylors contact in connection with La. Rev. Stat. 23:1061 establishing the statutory employee law.[34]

Therefore, TPIC submits that its Motion should be granted.[35]

The Walcott Claimants oppose the Motion, arguing that TPIC unsuccessfully "invokes every conceivable doctrine in an attempt to shield itself from tort liability for Mr. Walcott's injuries."[36] The Walcott Claimants advise as follows:

> TPIC's Motion for Summary Judgment on the issues of Mr. Walcott's borrowed employment should be denied because genuine issues of material fact as to the issues of control, intent, and authority predominate. Moreover, TPIC's alternative argument that somehow its statutory employer provision is valid fails because TPIC does not have standing to challenge the proper application of the LHWCA in this case.[37]

---

[31] R. Doc. 187 at p. 1.
[32] R. Docs. 186 and 187.
[33] R. Doc. 146-4 at p. 1.
[34] *Id.* at p. 16.
[35] *Id.*
[36] R. Doc. 180 at p. 1.
[37] *Id.* at pp. 21–22.

TPIC has filed a Reply, arguing that the *Ruiz* factors favor the finding that George Walcott was a borrowed employee of TPIC.[38] TPIC specifically explains that:

> Claimants' memorandum in opposition, supported by various exhibits, does not change the undisputed facts that during his seven-day hitch, Mr. Walcott lived, worked, ate and slept on TPIC's SP-24 structure all of which clearly suggest that TPIC fully controlled his presence on TPIC's structure during that work week. Further, common sense dictates . . . Mr. Walcott's preparation of all meals for personnel on the structure were absolutely essential to TPIC's ability to produce oil and gas.[39]

Therefore, TPIC reiterates that its Motion should be granted.[40]

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[42]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[43]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[44]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat

---

[38] R. Doc. 184.
[39] *Id.* at p. 10.
[40] *Id.* at p. 10.
[41] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[42] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).
[43] *Anderson*, 477 U.S. at 248.
[44] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[45]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[46]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[47]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[48] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[49]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[50]

---

[45] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[46] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[47] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[48] *Id.* at 1265.

[49] *See Celotex*, 477 U.S. at 322-23.

[50] *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).

### III.    ANALYSIS

"Both federal and Louisiana law use the same criteria for determining whether an employee is a borrowed employee."[51] As the parties correctly recognize, the Fifth Circuit's decision in *Ruiz v. Shell Oil Co.* governs the borrowed servant analysis.[52] In *Ruiz*, the Fifth Circuit enumerated nine factors for courts to consider when analyzing whether the borrowed employee doctrine applies.[53] Such factors include:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?[54]

"While the courts do not use a fixed test and do not decide the issue based on one factor, the courts place the most emphasis on the first factor, control over the

---

[51] *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615, 616 n.1 (5th Cir. 1986)(citing *Lorton v. Diamond M Drilling Co.,* 540 F.2d 212, 213 n. 1 (5th Cir.1976)).

[52] *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969).

[53] *Id.* at 312–13.

[54] *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988)(citing *Ruiz*, 413 F.2d at 312–13).

employee."[55] Additionally, "[t]he central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work."[56]  The Fifth Circuit has long noted that, "a careful distinction must be made between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."[57]  Further, a borrowing employer "gives direct orders to its borrowed servant."[58]  "The district court decides the borrowed employee issue as a matter of law . . . and, if sufficient basic factual ingredients are undisputed, the court may grant summary judgment."[59]

The TPG Claimants seek summary judgment declaring that David Hayes was acting as TPIC's borrowed servant at the time of the allision.[60] TPIC, in turn, seeks summary judgment finding that George Walcott was a borrowed servant of TPIC.[61] The Court first addresses each *Ruiz* factor as it pertains to David Hayes. Subsequently, the Court's analysis as to George Walcott starts – and ends – with the first two *Ruiz* factors. For the reasons set forth below, the Court finds that summary judgment is inappropriate as to George Walcott.  The Court further finds that David Hayes is a borrowed employee of TPIC.

---

[55] *Capps*, 784 F.2d at 617 (citing *Ruiz*, 413 F.2d at 312).
[56] *Mays v. Director, Office of Workers' Compensation Programs*, 938 F.3d 637, 641-42 (5th Cir. 2019) (quoting *Hebron v. Union Oil Co. of Cal.*, 634 F.2d 245, 247 (5th Cir. 1981)) (internal quotation marks omitted).
[57] *Mays*, 938 F.3d at 643-44 (quoting *Ruiz*, 413 F.2d at 313) (internal quotation marks omitted).
[58] *Mays*, 938 F.3d at 644 (citing authority).
[59] *Id.* (citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 358–59 (5th Cir. 1977)).
[60] R. Doc. 143.
[61] R. Doc. 146.

### A.    David Hayes is a borrowed employee of TPIC.

*1.    Who has control over the employee and the work he is performing?*

The first *Ruiz* factor asks who has control over the employee and the work he is performing. The TPG Claimants state that "[b]ecause TPIC—not TPG—directed and controlled Hayes's day-to-day work activities, the first and most important *Ruiz* factor strongly supports a finding that Hayes was TPIC's borrowed servant."[62] In opposition, the Walcott Claimants disagree, providing that:

> Given the MSA's unequivocal disclaimer of TPIC control and the distinction between the activities Hayes performed that TPIC actually undertook to control (production operations) versus what Hayes was actually doing that gave rise to the incident (driving a boat back to the dock for a crew change), this control element is neutral, or at the very least presents genuine issues of material fact preclusive of summary judgment at this juncture.[63]

TPIC, in turn, contends that David Hayes' TPIC supervisors "were sleeping when he was typically doing is work[,]" and therefore TPIC "exercised little or no control over his daily activities as a night time facility operator[.]"[64]

The record evinces, and the TPG Claimants concede, that The Production Group, LLC "had no supervisory personnel at the TPIC facility."[65] The record further demonstrates that TPIC Field Foremen control David Hayes' daily activities, his work shift, and his work instructions.[66] This has also been corroborated by deposition

---

[62] R. Doc. 143-2 at p. 8.

[63] R. Doc. 179 at p. 9.

[64] R. Doc. 182 at pp. 2–3.

[65] R. Doc. 179 at p. 8.

[66] *See* R. Doc. 143-4 at pp. 9–10, *February 6, 2026 Rule 30(b)(6) Deposition of Travis Wells, TPIC's Corporate Representative.*

testimony from David Hayes[67] and Tommy Lejuene.[68] Therefore, the Court finds the first *Ruiz* factor to support borrowed servant status.

> 2.      *Whose work is being performed?*

The TPG Claimants assert that David Hayes was performing TPIC's work located on TPIC's SP-24.[69] Both the Walcott Claimants[70] and TPIC concede this point.[71] As such, the Court finds that this factor weighs in favor of borrowed servant status.

> 3.      *Was there an agreement between the original and borrowing employer?*

The TPG Claimants assert that The Production Group, LLC and TPIC entered into a Master Services Agreement ("MSA"), and the "facts demonstrate that both companies understood the nature of the arrangement: TPG supplied personnel, and those personnel would perform production work within TPIC's offshore operations under TPIC supervision."[72] The Walcott Claimants argue that although there was a MSA between The Production Group, LLC and TPIC, "[t]here is no written agreement designating Hayes as TPIC's borrowed employee or employee of any kind."[73] TPIC concedes that David Hayes' presence on TPIC's SP-24 was pursuant to the MSA between The Production Group, LLC and TPIC.[74]

---

[67] *See* R. Doc. 143-6 at pp. 12–13, *August 19, 2025 Deposition of David Hayes.*
[68] *See* R. Doc. 143-7 at pp. 5–8, *March 2, 2026 Deposition of Tommy Lejuene.* Tommy Lejuene is TPIC's Production Superintendent.
[69] R. Doc. 143-2 at p. 9.
[70] R. Doc. 179 at p. 9.
[71] R. Doc. 182 at p. 4.
[72] R. Doc. 143-2 at p. 11.
[73] R. Doc. 179 at p. 11.
[74] R. Doc. 182.

The Court agrees with the TPG Claimants and TPIC. The record evidence demonstrates that there was an MSA in effect between The Production Group, LLC and TPIC,[75] and David Hayes was performing work on TPIC's SP-24 pursuant to that MSA.[76] Nonetheless, the Court acknowledges that the MSA between The Production Group, LLC and TPIC contains a contract provision purporting to prohibit borrowed employee status.[77] The Fifth Circuit has held that such provisions can raise factual disputes that should be determined by a factfinder.[78] The third *Ruiz* factor therefore is neutral toward borrowed servant status.

### 4. Did the employee acquiesce?

The fourth *Ruiz* factor asks whether the employee acquiesced in the new work situation. The TPG Claimants contend that "Hayes had worked in the South Pass field since approximately 2018 and that, during that time, he continued performing work for TPIC in that field even as staffing companies changed."[79] The Walcotts assert that "Hayes never consented to borrowed employee status and understood himself to be 'contracted to TPIC' and not 'employed by TPIC.'"[80] TPIC concedes that David Hayes "clearly" acquiesced to the work situation.[81]

---

[75] *See* R. Doc. 143-5.

[76] *See* R. Doc. 143-3 at ¶¶ 9–11.

[77] *See* R. Doc. 179-4 at p. 5.

[78] *Brown v. Union Oil of Calif.*, 984 F.2d 674, 678 (5th Cir. 1993). The Fifth Circuit in *Brown* further recognized, however, "that the terms of a contract and the related factual issues do not automatically prevent summary judgment or direct verdict. If the remaining borrowed employee factors overwhelmingly point to borrowed employee status, a summary judgment or direct verdict is appropriate." *Id.* at 678 n.5.

[79] R. Doc. 143-2 at p. 12.

[80] R. Doc. 179 at p. 11.

[81] R. Doc. 182 at p. 4.

The Court finds that the record reflects that David Hayes acquiesced to working within TPIC's operational structure.[82] The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them.[83] Moreover, the Fifth Circuit has held that one month is a sufficient amount of time for an employee to appreciate his new work conditions.[84] Prior to the allision, David Hayes worked on TPIC's SP-24 for roughly six years,[85] and the record shows that David Hayes was aware of his assignment to TPIC's SP-24 and continued to voluntarily work at SP-24.[86] Thus, this factor weighs in favor of borrowed servant status.

> 5.    *Did the original employer terminate his relationship with the employee?*

The fifth *Ruiz* factor asks whether the original employer terminated his relationship with the employee. According to the Fifth Circuit, "[t]he emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs."[87] The TPG Claimants argue that "Hayes worked under TPIC's supervision, reported to TPIC personnel in the field, and had no daily reporting relationship with TPG. Because TPG ceased control in its relationship with Hayes while the borrowing occurred, the fifth *Ruiz* factor weighs strongly in favor of borrowed servant status."[88] The Walcott Claimants assert that

---

[82] R. Doc. 143-3 at ¶ ¶ 12–13.

[83] *In re Weeks Marine, Inc.*, 88 F. Supp. 3d 593, 599 (M.D. La. 2015) (quoting *Brown*, 984 F.2d at 678 (internal quotation marks omitted)).

[84] *Brown*, 984 F.2d at 678.

[85] R. Doc. 143-3 at ¶ ¶ 12–13.

[86] R. Doc. 143-6 at p. 7, *August 19, 2025 Deposition of David Hayes*.

[87] *Brown*, 984 F.2d at 678 (quoting *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1246 (5th Cir. 1988)) (internal quotation marks omitted).

[88] R. Doc. 143-2 at p. 14.

"TPG maintained core employment functions (benefits, payroll, resume confirmation, hiring)."[89] TPIC concedes that, "as evidenced by the respective pleadings on this issue," The Production Group, LLC did not perform "any significant oversight" over David Hayes while on SP-24.[90]

The Court finds that the record demonstrates that TPIC directed David Hayes' daily activities and that The Production Group, LLC did not have any supervisors on location at TPIC's SP-24.[91] Indeed, the Walcott Claimants have conceded this fact.[92] Accordingly, the fifth *Ruiz* factor also favors borrowed servant status.

6.      *Who furnished the tools and place for performance?*

The TPG Claimants assert that, aside from personal protection equipment and a uniform, The Production Group, LLC did not provide David Hayes with any equipment to perform his job at TPIC's SP-24.[93] The Walcott Claimants counter that "TPG was instrumental in providing Hayes with *all* personal protective equipment he needed to perform his production operator functions. TPIC did not provide these core tools and equipment. TPG provided Hayes's uniform which bore TPG—not TPIC's—logo."[94] TPIC concedes that the tools David Hayes used for its performance of work on TPIC's SP-24 were provided by TPIC.[95]

---

[89] R. Doc. 179 at p. 12.
[90] R. Doc. 182 at p. 5.
[91] *See* R. Doc. 143-4 at pp. 18, 20, *February 6, 2026 Rule 30(b)(6) Deposition of Travis Wells, TPIC's Corporate Representative.*
[92] R. Doc. 179 at p. 12.
[93] R. Doc. 143-2 at p. 15.
[94] R. Doc. 179 at p. 12 (emphasis original).
[95] R. Doc. 182 at p. 5.

The Court agrees. The record is clear that the place for performance for David Hayes was TPIC's SP-24.[96] Further, the record is clear that, other than personal protection equipment and a uniform, TPIC provided all tools for David Hayes' work. Thus, this factor supports borrowed servant status.[97]

### 7.    *Was the new employment over a considerable length of time?*

The TPG Claimants assert that David Hayes was working at TPIC's SP-24 for numerous years prior to the allision. Both the Walcott Claimants[98] and TPIC concede this point.[99] As such, the Court finds that this factor weighs in favor of borrowed servant status.

### 8.    *Who had the right to discharge the employee?*

The TPG Claimants submit that TPIC had the authority to discharge David Hayes and terminate his services with TPIC.[100] The Walcott Claimants, in turn, state that "TPIC could remove Hayes from assignment with TPIC but could not terminate his employment with TPG."[101] TPIC argues that it could ask The Production Group, LLC to no longer have David Hayes work for TPIC.[102]

"[T]he proper focus when considering who has the right to discharge the employee is whether the purported borrower had the right to terminate the worker's services with *itself*, not his employment with the lending employer."[103] Here, the

---

[96] R. Doc. 143-3 at ¶ 12; R. Doc. 143-6 at pp. 6–7.
[97] *See* R. Doc. 143-4 at p. 22; R. Doc. 143-6 at pp. 13–14.
[98] R. Doc. 179 at p. 12.
[99] R. Doc. 182 at p. 5.
[100] R. Doc. 143-2 at p. 17.
[101] R. Doc. 179 at p. 12.
[102] R. Doc. 182 at p. 5.
[103] *Mays v. Director, Office of Workers' Compensation Programs*, 938 F.3d 637, 646 (5th Cir. 2019)(citation modified).

record demonstrates that TPIC had the authority to remove David Hayes from his assignment with TPIC.[104] All parties concede this point as well.[105] Thus, this factor favors borrowed servant status.

9.      *Who had the obligation to pay the employee?*

The ninth and final *Ruiz* factor asks who had the obligation to pay the employee. The TPG Claimants state that "[a]lthough TPG issued Hayes's paycheck, TPIC controlled and approved the hours for which Hayes was paid and funded Hayes's work in the South Pass field."[106] In contrast, the Walcott Claimants assert that "TPG issued Hayes's paychecks, provided him with a benefits package (health/dental/vision), and handled payroll administration."[107] TPIC concedes that David Hayes would "submit a time sheet for approval to the TPIC field foreman who, would then, send it to the payroll employer who, based upon the time submitted, would present an invoice to TPIC who would then satisfy the invoice and the men would be paid their salaries through that avenue."[108]

"Typically, the distinguishing factor is the basis on which the purported borrower makes its payments."[109] The Fifth Circuit has found borrowed servant status where "the borrower paid the nominal employer based on the number of hours the borrowed servant worked, and then the nominal employer paid the borrowed

---

[104] R. Doc. 143-3, ¶ 23; R. Doc. 143-4 at p. 11, *February 6, 2026 Rule 30(b)(6) Deposition of Travis Wells, TPIC's Corporate Representative*; R. Doc. 143-7, *March 2, 2026 Deposition of Tommy Lejuene.*
[105] R. Doc. 143-2 at p. 17; R. Doc. 179 at p. 12.; R. Doc. 182 at p. 5.
[106] R. Doc. 143-2 at p. 19.
[107] R. Doc. 179 at p. 12.
[108] R. Doc. 182 at p. 5.
[109] *Mays*, 938 F.3d at 646.

servant a percentage of that payment."[110] Here, the record demonstrates the precise scenario envisioned by the Fifth Circuit. Hayes would submit a timesheet for approval to TPIC who then transfer it to The Production Group, LLC, the payroll employer, who would then compensate David Hayes for his work on TPIC's SP-24.[111] Accordingly, this factor supports borrowed servant status.

In sum, the Court finds that the record evidence supports, without any genuine dispute of a material fact, that eight *Ruiz* factors weigh in favor of a borrowed servant status.[112] Notably, the first factor – control – heavily favors finding a borrowed servant relationship. Accordingly, the Court finds that David Hayes was TPIC's borrowed servant and that the TPG Claimants are entitled to summary judgment on this issue.

### B. TPIC is not entitled to summary judgment as to George Walcott's status.

*1.     Who has control over the employee and the work he is performing?*

TPIC contends that it controlled the daily activities of George Walcott because TPIC would have informed George Walcott if he was not doing his job properly, the TPIC Field Foreman actively interacted with George Walcott regarding feeding TPIC

---

[110] *Id.* at 646–47 (citing *Capps*, 784 F.2d at 618; *Melancon*, 834 F.2d at 1246).

[111] *See* R. Doc. 143-3 at ¶ 3; R. Doc. 143-4 at pp. 20–21, *February 6, 2026 Rule 30(b)(6) Deposition of Travis Wells, TPIC's Corporate Representative.*

[112] Insofar as the Walcott Claimants argue that the language in the MSA between The Production Group, LLC and TPIC creates a material factual dispute, the Court agrees with another Section of this Court that "[t]he Fifth Circuit has held that 'a contract provision purporting to prohibit borrowed-employee status' creates an issue of fact as to the third factor, such that summary judgment would be appropriate only when 'the remaining factors clearly point to borrowed-employee status.'" *Washington v. Fieldwood Energy LLC*, Civil Action No: 15-6615, 2018 WL 263230, at *3 (E.D. La. Jan. 2, 2018)(Milazzo, J.)(quoting *Billizon v. Conoco, Inc.*, 993 F.2d 104, 106 (5th Cir. 1993)). Accordingly, because the Court finds all other factors favor borrowed servant status, summary judgment is appropriate.

personnel, TPIC set George Walcott's schedule, and the TPIC Field Foreman would answer any of George Walcott's work related questions.[113] In contrast, the Walcott Claimants assert that TPIC "did not have any authoritative control over the manner in which he cooked," George Walcott "came up with his own menu and cooked meals the way he wanted to cook them, and that no one from TPIC supervised the way he cooked or prepared meals or the way he cleaned."[114] Further, the Walcott Claimants submit that if George Walcott "had a question about whether he should perform a certain requested task, he would consult with Taylors, not TPIC."[115]

The Court finds that a genuine issue of material fact exists as to George Walcott's borrowed employment status, thereby precluding summary judgment. Although TPIC asserts that it had control over George Walcott's daily activities, the record does not reflect such assertion. In a March 11, 2026 affidavit, Randy Seal, a Field Foreman employed by TPIC, attested to the fact that George Walcott "did not need anyone telling him the specific details on how to cook the food or to clean utensils or manage the galley."[116] To that end, in a March 30, 2026 affidavit, George Walcott attested as follows:

> 17. TPIC personnel did not train me to perform my steward duties and did not supervise the details of how I performed those duties on a day-to-day basis.
>
> 18. To the extent TPIC personnel communicated with me. [I]t was generally limited to coordinating meals and purchasing/providing necessary groceries I requested. lodging, or general logistics, rather than directing the manner and method of my work.

---

[113] R. Doc. 146-4 at p. 7.
[114] R. Doc. 180 at p. 9
[115] *Id.* at p. 10.
[116] R. Doc. 146-6 at p. 2.

. . . .

21. TPIC never communicated any oral or written procedures with respect to my cooking, cleaning or hospitality services.

22. I came up with my own menu and cooked meals the way I wanted to cook them; no one from TPIC supervised the way I cooked and prepared meals. or the way I cleaned.[117]

Thus, a genuine issue of material fact exists as to TPIC's control over George Walcott's daily activities. The record evinces that George Walcott had a greater level of autonomy compared to that of David Hayes. And herein lies the fundamental distinction between the two. David Hayes, a Production Operator, was under the control of TPIC while located on TPIC's SP-24 – a production facility. George Walcott, however, was a catering hand assigned to work on SP-24. The Court agrees with another Section of this Court that "[c]ooking and cleaning cannot be said to be an essential aspect of oil and gas production. In addition, the maintenance of production equipment is far less incidental to that production than cooking and cleaning for the crew."[118] Accordingly, this distinction also raises a genuine issue of material fact as to the second factor – whose work is being performed.

As a final point, the MSA between Taylors and TPIC contains a contract proviso purporting to prohibit borrowed-employee status.[119] The Fifth Circuit has stated that, when such provision exists, summary judgment is appropriate only "when the remaining factors clearly point to borrowed-employee status."[120] The Court

---

[117] R. Doc. 180-2 at pp. 2–3.
[118] *Washington*, 2018 WL 263230, at *3.
[119] R. Doc. 146-8 at p. 5.
[120] *Billizon*, 993 F.2d at 106.

has found, as it pertains to George Walcott, that *at least* two genuine issues of material fact exist regarding the first two *Ruiz* factors. Accordingly, as instructed by the Fifth Circuit, the Court deems that summary judgment is inappropriate as to George Walcott.

## IV.    CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED** that the TPG Claimants' Motion for Partial Summary Judgment on Borrowed Servant Status[121] is **GRANTED.**

**IT IS FURTHER ORDERED** that TPIC's Motion for Summary Judgment[122] is **DENIED WITHOUT PREJUDICE.**

New Orleans, Louisiana, May 15, 2026.

*Wendy B Vitter*
_____
**WENDY B. VITTER**
**United States District Judge**

---

[121] R. Doc. 143.
[122] R. Doc. 146.