**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: IN THE MATTER OF TEXAS             CIVIL ACTION
PETROLEUM INVESTMENT COMPANY
                                          NO. 24-2344

                                          SECTION: "D" (2)

<u>**ORDER AND REASONS**</u>

Before the Court is a Motion for Summary Judgment, filed by Texas Petroleum Investment Company ("TPIC").[1] The Production Group, LLC and David Hayes ("TPG Claimants") Oppose the Motion,[2] and TPIC has filed a Reply.[3] Also before the Court is a Motion for Partial Summary Judgment on Maritime Contract Classification, filed by TPG Claimants.[4] TPIC has filed an Opposition,[5] and TPG Claimants have filed a Reply.[6]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** TPIC's Motion for Summary Judgment[7] and **DENIES AS MOOT** TPG Claimants' Motion for Partial Summary Judgment on Maritime Contract Classification.[8]

---

[1] R. Doc. 81.
[2] R. Doc. 85.
[3] R. Doc. 86.
[4] R. Doc. 144.
[5] R. Doc. 160.
[6] R. Doc. 178.
[7] R. Doc. 81.
[8] R. Doc. 144.

1

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court, in a previous Order and Reasons, has detailed the factual background at length in this matter.[9] The Court therefore provides the factual background only as necessary to the instant Motion.

This action for exoneration from or limitation of liability arises out of an April 10, 2024 allision involving the Vessel LA 9395[10] on the inland waters of Plaquemines Parish, Louisiana.[11] At all times pertinent, TPIC owned and operated South Pass 24 ("SP-24"), a fixed oil and gas production platform located on the inland waters of Plaquemines Parish, Louisiana.[12] David Hayes, an employee of The Production Group, LLC,[13] and George Walcott, and employee of Taylors International Services, were assigned to work on SP-24.[14]

On the morning of the incident, David Hayes and George Walcott conducted a routine crew shift transfer.[15] David Hayes operated the Vessel – a small aluminum hull crew boat owned by TPIC – and departed from SP-24 to a dock in Venice,

---

[9] *See* R. Doc. 91.

[10] Vessel La 9395 is also referred to as the M/V SYDNEY. *See* R. Doc. 73-1 at p. 2. The Court will refer to it as the "Vessel" throughout this Order and Reasons.

[11] R. Doc. 73-1 at p. 2.

[12] R. Doc. 85-1 at p. 2. More specifically, TPIC's SP-24 is located on State Lease No. 1923 within Louisiana's territorial waters. *Id.* at p. 3.

[13] The Court has previously ruled on TPG Claimants' Moton for Partial Summary Judgment on Borrowed Servant Status. *See* R. Doc. 228.  The Court's reference to Hayes as an employee of The Production Group in this Order is not intended to change the Court's ruling on Hayes' borrowed servant status.

[14] R. Doc. 81-2 at p. 1; R. Doc. 85 at p. 2; R. Doc. 85-1 at p. 3. The Court makes no determination on the contested "borrowed servant" status relating to David Hayes' employment.

[15] R. Doc. 85 at p. 2.

Louisiana.[16] George Walcott was one of the passengers in the Vessel.[17] During the voyage to Venice, the Vessel allided with a submerged obstruction in the water, allegedly causing injuries to George Walcott.[18]

At the time of the allision, TPIC and The Production Group, LLC were operating under a Master Services Agreement ("MSA") that was executed on June 1, 2019.[19] The MSA, in pertinent part, provides as follows:[20]

> Company: TEXAS PETROLEUM INVESTMENT COMPANY
>
> . . . .
>
> Contractor: ES&H PRODUCTION GROUP, LLC
>
> . . . .
>
> WHEREAS, Company is engaged in the business of exploration, development and operation of oil and gas wells for others, or for its own account, or is engaged in the production of oil and gas, and in the course of such operations regularly and customarily enters into contracts with independent contractors for performance of service thereto; and
>
> . . . .
>
> 11.3 This Agreement shall be governed, construed and interpreted in accordance with the Laws of the State of Louisiana, Texas or Mississippi as determined by where the work is performed. [21]

---

[16] R. Doc. 85 at p. 2; R. Doc. 85-1 at p. 3.

[17] R. Doc. 85 at p. 2. The Court acknowledges that there were other passengers in the Vessel at the time of the accident. *Id.* at pp. 2–3. The Court only references George Walcott for the sake of convenience.

[18] R. Doc. 85 at p. 3.

[19] R. Doc. 81-4 at p. 2; R. Doc. 12-1.

[20] It is undisputed that "TPG's predecessor, E&H Production Group, LLC, entered into the MSA with TPIC on June 1, 2019[]" and that "E&H Production Group, LLC was subsequently acquired by TPG." R. Doc. 85-1 at p. 3. Therefore, the Court, when interpreting the MSA, substitutes ES&H Production Group, LLC with The Production Group, LLC.

[21] R. Doc. 12-1 at pp. 1, 10–11, 14.

On September 26, 2024, TPIC filed a Complaint for Exoneration from or Limitation of Liability in this Court.[22] Thereafter, on March 27, 2025, TPG Claimants filed an Amended Answer and Claim to Texas Petroleum Investment Company's Complaint for Exoneration from or Limitation of Liability, in which the TPG Claimants state as follows:

> The TPG Parties aver that the injuries and damages alleged by George Walcott and Evelyn Walcott were not caused by the fault, negligence, acts, omissions or culpable conduct of the TPG Parties, but were caused, in whole or in part, by the faults, negligent acts, omissions or culpable conduct of Petitioner and/or their employees, agents, servants and/or other persons, for none of whom the TPG Parties are liable.
>
> . . . .
>
> To the extent the TPG Parties are held liable for the injuries alleged by the Walcotts, the TPG Parties are entitled to complete non-contractual indemnity and/or contribution from Petitioner, pursuant to the General Maritime Law, because of its negligent contribution to the event leading to any such liability, together with interest, costs, and attorneys' fees.
>
> . . . .
>
> The TPG Parties further assert that they are entitled to contractual defense and indemnity from Petitioner pursuant to the master services agreement dated June 1, 2019 . . . .[23]

On April 3, 2025, TPIC filed an Answer to TPG Claimants' Amended Answer and Claim, whereby TPIC denied TPG Claimants' allegations of entitlement to contractual defense and indemnity and non-contractual indemnity and/or contribution under the MSA.[24]

---

[22] R. Doc. 1.
[23] R. Doc. 12 at p. 13.
[24] R. Doc. 13 at p. 4.

TPIC filed the instant Motion for Summary Judgment on November 25, 2025.[25] TPIC seeks summary judgment dismissing TPIG Claimants' claims for non-contractual indemnity and/or contribution and for contractual defense and indemnity pursuant to the MSA.[26] As an initial matter, TPIC asserts that Louisiana law applies to the instant dispute for two reasons.[27] First, TPIC alleges that the domiciles of the parties involved, the subject matter of the MSA, the place of performance under the MSA, and the public policy of Louisiana all favor applying Louisiana law.[28] Second, TPIC asserts that the MSA's choice of law provision dictates that Louisiana law must apply to the suit.[29]

Under the above premise, TPIC argues that TPG Claimants' claim for contractual defense and indemnity is prohibited under the Louisiana law, specifically the Louisiana Oilfield Anti-Indemnity Act ("LOAIA").[30] TPIC contends that the LOAIA is applicable to the instant dispute because the MSA "is one involving the exploration and production of oil and gas from a fixed structure situated in the State of Louisiana."[31] No exception to the LOAIA applies, according to TPIC.[32] TPIC submits that The Production Group, LLC has not paid to be named an additional insured on TPIC's liability insurance policy, and "[a] review of the TPIC/TPG MSA

---

[25] R. Doc. 81.
[26] R. Doc. 81-2 at p. 1.
[27] *Id.* at p. 4.
[28] *Id.*
[29] *Id.* at p. 5.
[30] *Id.* at p. 3.
[31] *Id.* at p. 7.
[32] *Id.*

reveals, there is no 'Marcel' and in fact no insuring provision whatsoever in the MSA whereby TPG can be named an additional insured on TPIC's policy . . . ."[33]

As to TPG Claimants' non-contractual indemnity and/or contribution claim, TPIC asserts that Louisiana Civil Code article 2324 has eliminated any legal basis for non-contractual indemnity and/or contribution pertaining to joint tortfeasors.[34] Additionally, TPIC contends that "[t]he availability of indemnity under maritime law is extremely limited[]" and that "only a handful of viable tort indemnity theories remain."[35] Because TPG Claimants are ordinary defendants whose fault is quantifiable, as opposed to mere non-negligent defendants, TPIC alleges that "there is no legal basis on which a claim for non-contractual contribution for indemnity can be maintained against TPIC."[36] Thus, according to TPIC, it is entitled to summary judgment on both TPG Claimants' contractual defense and indemnity and non-contractual indemnity and/or contribution claims.[37]

TPG Claimants oppose the Motion, asserting that "the [M]otion fails for two independent reasons."[38] According to TPG Claimants:

> First, TPIC never conducts the threshold maritime contract analysis required by the Fifth Circuit. Under *In re Larry Doiron, Inc.*, a court must classify the contract as maritime or nonmaritime as a threshold matter because that determination dictates whether maritime law or state law (such as LOAIA) governs the indemnity provision. The MSA here contains numerous maritime-specific provisions—such as Protection and Indemnity insurance, LHWCA/OCSLA extensions, vessel-related risk allocations, and unseaworthiness language—

---

[33] *Id.*
[34] *Id.* at pp. 8–9.
[35] *Id.* at p. 9.
[36] *Id.* at p. 12.
[37] *Id.* at p. 13.
[38] R. Doc. 85 at p. 1.

reflecting the parties' expectation that vessel operation would be part of the contracted work. Consistent with those terms, TPG operators routinely operated TPIC's vessels as part of their assigned work, and the allision giving rise to this litigation occurred while a TPG operator was navigating a TPIC vessel on navigable waters. At a minimum, genuine issues of material fact exist regarding maritime status. Because TPIC has not established that Louisiana law governs the MSA, it has not satisfied the legal predicate necessary to invoke LOAIA, and its motion therefore fails under the framework it advances.

Second, even assuming Louisiana law applied, TPIC's motion is premature. Under *Meloy v. Conoco, Inc.,* and consistent with recent Eastern District of Louisiana decisions applying *Meloy*, an indemnity provision cannot be voided under LOAIA until the indemnitee's fault has been adjudicated. No such determination has been made here, and significant factual issues remain unresolved—including whether David Hayes was TPIC's borrowed servant at the time of the allision, a finding that would directly affect whose negligence, if any, is at issue. Until these factual matters are resolved, any LOAIA analysis is not ripe for summary judgment.[39]

Further, pertaining to TPIC's request to dismiss their non-contractual indemnity and/or contribution claims, TPG Claimants contend that "TPG is not seeking to shift liability for its own alleged negligence onto TPIC. Nor is TPG asserting a right to non-contractual indemnity in the traditional, now-defunct sense. Instead, TPG's position is straightforward: each party should ultimately bear the percentage of fault assigned to it by the factfinder."[40] Moreover, TPG Claimants assert that "[u]ntil the factfinder resolves whose conduct caused the alleged injury, and to what extent, any request to dismiss TPG's apportionment-based contribution claim is premature."[41] Therefore, according to TPG Claimants, the instant Motion should be denied.[42]

---

[39] *Id.* at pp. 1–2.
[40] *Id.* at p. 16.
[41] *Id.* at p. 16.
[42] *Id.* at p. 2.

TPIC, in Reply, asserts that the MSA is not a maritime contract.[43] As explained by TPIC:

> TPG agrees that the platform upon which Mr. Hayes, a platform production operator, was employed is a fixed structure situated in Louisiana State waters. The MSA also stipulates that TPIC, through the platform, was engaged in the production of oil and gas.
>
> . . . .
>
> These factors alone should evidence a strong lean towards non-maritime status. TPG urges the MSA contemplates utilization of vessels for the services to be provided by TPG. No, it doesn't. There is no reference anywhere in the MSA whereby TPG is obliged to provide vessel or vessel services pursuant to the contract as required by *Doiron*.  The only reference in the MSA to vessels as to TPG is that if TPG is to supply a vessel in connection with its services, which it did not, then it was to acquire marine related coverages to insure those activities, which it did not.  The only actual service TPG provided to TPIC was to supply production operators, such as Mr. Hayes to assist in the production of oil and gas from a fixed platform located in Louisiana . . . .[44]

Therefore, TPIC argues that the MSA is not maritime in nature but instead pertains to oil and gas, leading to the application of the LOAIA.[45] Further, TPIC contends that even if the MSA can be classified as a maritime contract, the MSA's choice of law provision applying Louisiana law is valid and enforceable under federal maritime law.[46]

Applying Louisiana law to TPG Claimants' contractual defense and indemnity claim, TPIC asserts that TPG Claimants' defense of prematurity is no longer viable under recent Louisiana Supreme Court precedent.[47] As to TPG Claimants' non-

---

[43] R. Doc. 86.
[44] *Id.* at p. 2 (emphasis original).
[45] *Id.* at p. 3.
[46] *Id.* at p. 6.
[47] *Id.* at p. 10.

contractual indemnity and/or contribution claim, "TPIC agrees that under the General Maritime Law, each party bears the percentage of fault assigned to it and TPIC is well mindful of that consideration. Thus, as stated in TPIC's original motion, the law does not allow for the claim being asserted by TPG for non-contractual contribution/indemnity."[48]  Accordingly, TPIC reiterates that it is entitled to summary judgment.[49]

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[50]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[51]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[52]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[53]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only

---

[48] *Id.* at p. 8.
[49] *Id.* at p. 10.
[50] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[51] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).
[52] *Anderson*, 477 U.S. at 248.
[53] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

a scintilla of evidence."[54]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[55]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[56]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[57]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[58]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[59]

---

[54] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[55] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[56] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[57] *Id.* at 1265.

[58] *See Celotex*, 477 U.S. at 322-23.

[59] *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).

### III. ANALYSIS

TPIC seeks summary judgment on TPG Claimants' contractual defense and indemnity and non-contractual indemnity and/or contribution claims.[60] The Court first resolves whether Louisiana law or general maritime law applies. The Court then addresses TPG Claimants' non-contractual indemnity and/or contribution claim. For the reasons set forth below, the Court finds that Louisiana law applies in interpreting the MSA and that TPIC is entitled to summary judgment on TPG Claimants' non-contractual indemnity and/or contribution claim.

### A. Louisiana law applies to the MSA.

As a threshold issue, the Court must first resolve whether Louisiana law or general maritime law is applicable to the instant dispute. TPIC asserts that regardless of whether the MSA is classified as maritime or non-maritime in nature, the MSA's forum selection clause dictates that Louisiana law will apply to the MSA.[61] TPG Claimants, in turn, contend that the MSA should be classified as maritime, thereby triggering the application of general maritime law to the MSA.[62] As explained below, the Court finds that Louisiana law applies to the MSA regardless of whether the MSA is classified as non-maritime or maritime.

---

[60] R. Doc. 81.
[61] R. Docs. 81 and 86.
[62] R. Doc. 85.

### 1. Non-Maritime

If the MSA is classified as non-maritime, Louisiana law would apply either through the Outer Continental Shelf Lands Act or from Book IV of the Louisiana Civil Code. The Court takes each in turn.

The Outer Continental Shelf Lands Act ("OCSLA") applies state law as surrogate federal law under three conditions: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto)[;] (2) Federal maritime law must not apply of its own force[;] [and] (3) The state law must not be inconsistent with Federal law."[63] As to the first element:

> [A] contractual indemnity claim (or any other contractual dispute) arises on an OSCLA situs if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A). It is immaterial whether the underlying incident that triggers the indemnity obligation occurs on navigable waters or on a platform or other OSCLA situs.[64]

The parties dispute the second element – whether federal maritime law applies on its own force.[65] Lastly, regarding the third element, the Fifth Circuit has held that "[n]othing in LOIA is inconsistent with federal law . . . ."[66]

If all three elements are met, the OCSLA is applicable and "supersedes the normal choice-of-law rules that the forum would apply, requiring courts to apply the

---

[63] *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

[64] *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788 (5th Cir. 2009).

[65] *See* R. Docs. 81, 85, and 86. TPIC asserts that maritime law does not apply on its own force, and therefore Louisiana law governs the instant dispute. TPG Claimants, however, argue that federal maritime law governs the instant dispute.

[66] *Tetra Technologies, Inc. v. Continental Ins. Co.*, 814 F.3d 733, 742 (5th Cir. 2016)(citing *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 789 (5th Cir. 2009)).

'civil and criminal laws of [the] adjacent state.'"[67] It is undisputed that TPIC's South Pass 24 is a fixed platform located within the territorial waters of the State of Louisiana.[68] Therefore, assuming *arguendo* that all three OCSLA elements are satisfied, then the law of Louisiana, as the "adjacent state," would apply as the surrogate federal law. This is true even where the parties contract for a choice-of-law provision, as "[b]oth federal and Louisiana state courts routinely disregard choice-of-law provisions in master service contracts when OCSLA requires the application of adjacent law."[69] However, as explained below, because the choice of law provision in the MSA chooses Louisiana law, there is no conflict between the OCSLA and the choice-of-law provision – both lead to the application of Louisiana law.[70]

However, if the OCSLA is not applicable and the MSA is not classified as maritime, the Court would turn to the MSA's choice of law provision.[71] Article 11.3 of the MSA provides that "[t]his Agreement shall be governed, construed and interpreted in accordance with the Laws of the State of Louisiana, Texas or Mississippi as determined by where the work is performed."[72]

Here, the allision occurred during a routine crew change transit leaving TPIC's SP-24 – a fixed platform located in the territorial waters of Louisiana.[73] David Hayes, the operator of the Vessel, was "assigned to TPIC's operations at the South Pass 24

---

[67] *Cardoso-Gonzalez v. Anadarko Petroleum Corporation*, 326 F. Supp. 3d 273, 280 (E.D. La. June 20, 2018)(Morgan, J.)(quoting 43 U.S.C. § 1333(a)(2)(A)).
[68] R. Doc. 85-1 at p. 3.
[69] *Cardoso-Gonzalez*, 326 F. Supp. 3d at 281.
[70] *See, e.g., Matte v. Zapata Offshore Co.*, 784 F.2d 628 (5th Cir. 1986).
[71] R. Doc. 85-2 at p. 14.
[72] *Id.*
[73] R. Doc. 85-1 at p. 3.

field as a production operator furnished by TPG pursuant to the MSA."[74] George Walcott, the allegedly injured party, was employed as a steward aboard TPIC's SP-24.[75] Moreover, TPIC has a significant Louisiana presence as the owner and operator of SP-24.[76] Accordingly, the work performed under the MSA was in Louisiana, and Louisiana law governs the MSA.

"Under Louisiana law, contractual choice-of-law provisions are presumed valid, unless the chosen law 'contravenes the public policy' of the state whose law would otherwise apply."[77] "[T]he word 'state' denotes, as may be appropriate: the United States . . . ."[78] Put another way, "[w]ith regard to matters governed by federal law, the United States may also be considered a 'state[.]'"[79] To that end, the Fifth Circuit has determined that "[i]n the absence of a choice of law clause, the construction of indemnity provisions in a contract involving maritime obligations is governed by maritime law."[80] Under maritime law, choice-of-law provisions are presumptively enforceable except when the chosen law would contravene a federal statute, conflict with a federal maritime policy, or when the parties cannot provide a reasonable basis for the chosen jurisdiction.[81] For the reasons set forth *infra* Part. III.A.2, the Court finds that the MSA's choice of law provision is valid and enforceable under maritime law. Therefore, the Court finds that Louisiana law would apply if the

---

[74] R. Doc. 85 at p. 3.
[75] R. Doc. 85-1 at p. 3.
[76] R. Doc. 81-2 at p. 4.
[77] *U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*, 649 F. Supp. 3d 233, 239–40 (E.D. La. Jan. 9, 2023)(Vance, J.)(quoting LA. CIV. CODE art. 3540).
[78] LA. CIV. CODE art. 3516.
[79] LA. CIV. CODE art. 3516, 1991 Revision Comments.
[80] *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988)(gathering authority).
[81] *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 76 (2024).

MSA was non-maritime and regardless of whether the OCSLA applied. The Court now considers whether the MSA is classified as a maritime contract.

### 2. Maritime

"Maritime law applies to contractual indemnity provisions when the contract is a maritime contract."[82] The Fifth Circuit has enumerated a two-prong test to determine whether a contract is maritime, thereby subjecting a contract to general maritime law:

> First, is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters? . . . Second, if the answer to the above question is "yes," does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract? If so, the contract is maritime in nature.[83]

"An affirmative answer to both questions is necessary before the label 'maritime' may be applied to the contract."[84]

The Fifth Circuit has routinely stated that "'[u]nder federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable.'"[85] "The parties' choice of law clause in an admiralty case will govern 'unless the [chosen] state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law.'"[86] Most recently and most importantly, the Supreme Court unanimously held

---

[82] *Cantium, LLC v. FDF Energy Services, LLC*, 736 F.Supp.3d 422, 428 (E.D. La. June 7, 2024)(Fallon, J.)(citing *In re Larry Doiron, Inc.*, 879 F.3d 568, 571 (5th Cir. 2018) (en banc)).

[83] *In re Larry Doiron, Inc.*, 879 F.3d at 576.

[84] *In re Crescent Energy Services, L.L.C. for Exoneration from or Limitation of Liability*, 896 F.3d 350, 355 (5th Cir. 2018).

[85] *St. Paul Fire & Marine Ins. Co. v. Board of Com'rs of Port of New Orleans*, 418 Fed. Appx. 305, 309 (5th Cir. 2011)(quoting *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009)).

[86] *Id.* (quoting *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988)).

that "[a]s a matter of federal maritime law, choice-of-law provisions in maritime contracts are presumptively enforceable[,]" with two narrow exceptions.[87] First, "courts should disregard choice-of-law clauses in otherwise valid maritime contracts when the chosen law would contravene a controlling federal statute . . . or conflict with an established federal maritime policy . . . ."[88] Second, "courts may disregard choice-of-law clauses when parties can furnish no reasonable basis for the chosen jurisdiction."[89]

Here, even *assuming arguendo* that the MSA is maritime in nature, the Court finds that the MSA's choice of law provision is valid and enforceable under federal maritime law. The pertinent proviso in the MSA provides that the MSA "shall be governed, construed and interpreted in accordance with the Laws of the State of Louisiana, Texas or Mississippi as determined by where the work is performed."[90] As explained above, Louisiana is where the work at issue under the MSA was performed. Accordingly, the MSA's choice of law provision is presumptively enforceable unless the chosen law (i.e., Louisiana) would contravene a federal statute or conflict with federal maritime policy or if the parties can furnish no reasonable basis for the chosen law (i.e., Louisiana).[91]

As to the first exception, the Fifth Circuit determined that the LOAIA "does not conflict with any fundamental purpose of maritime law. The Statute neither

---

[87] *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 76 (2024).
[88] *Id.*
[89] *Id.*
[90] R. Doc. 85-2 at p. 14.
[91] *Great Lakes Insurance SE*, 601 U.S. at 76.

conflicts with nor is it preempted by federal maritime law."[92] Thus, "[b]ecause Louisiana's Anti–Indemnity Statute does not conflict with any fundamental purpose of maritime law, Louisiana law controls the rights of the parties here as they agreed it should."[93]

As to the second exception—where the parties can furnish no reasonable basis for the chosen jurisdiction—Louisiana has a substantial relationship to the partes in this instant dispute. TPIC owns SP-24, which is "located in the inland waters of Plaquemines Parish, Louisiana."[94] The allision occurred in the territorial jurisdiction of Louisiana.[95] The Production Group, LLC is "a limited liability company organized under the laws of the State of Louisiana[,]" and "David Hayes is [a] natural person and citizen of the state of Louisiana."[96] In addition to this factual nexus to Louisiana, the Fifth Circuit has "recognized the strength of Louisiana's interest in applying the Anti–Indemnity Statute."[97] Thus, because no exceptions to enforcing the MSA's choice of law provisions apply, the MSA's choice of law proviso selecting Louisiana law is valid and enforceable under federal maritime law.[98]

---

[92] *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d at 1518; *see* also *Tetra Technologies, Inc.*, 814 F.3d at 742 (citing *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 789 (5th Cir. 2009)).

[93] *Stoot*, 851 F.2d at 1518.

[94] R. Doc. 85-1 at p. 2.

[95] R. Doc. 85 at p. 3; R. Doc. 85-1 at p. 3.

[96] R. Doc. 12 at p. 9. The Court acknowledges that, confusingly, TPG admitted that it is a "Louisiana corporation with its principal place of business located in Houma, Louisiana." R. Doc. 85-1 at p. 2. This appears to be an oversight, as the record reflects that The Production Group is an LLC. *See* R. Doc. 12. As this Court has Admiralty and Maritime jurisdiction pursuant to 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure and pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq*, it is of no moment whether TPG is a corporation or an LLC.

[97] *Stoot*, 851 F.2d at 1518 (citing *Matte v. Zapata Offshore Co.,* 784 F.2d 628 (5th Cir.1986)).

[98] This renders as moot TPG Claimants' Motion for Partial Summary Judgment on Maritime Contract Classification. R. Doc. 144. In that Motion, TPG argues that classification of the MSA as non-maritime or maritime "determines whether the agreement's indemnity provisions are governed by federal maritime law or instead by the Louisiana Oilfield Anti-Indemnity Act." R. Doc. 144-2 at p. 1. As

**B. TPIC is entitled to summary judgment on TPG Claimants' claim for non-contractual indemnity and/or contribution.**

Having determined that Louisiana applies regardless of whether the MSA is non-maritime or maritime, the Court turns to the merits.[99] TPIC asserts that it is entitled to summary judgment on TPG Claimants' claim for non-contractual indemnity and/or contribution, as both Louisiana law and general maritime law provide no legal right to claim non-contractual indemnity or contribution in this matter.[100] TPG Claimants, in turn, assert that although "courts have largely eliminated traditional non-contractual indemnity among joint tortfeasors in favor of comparative fault[,]" TPG is not asserting a non-contractual indemnity claim "in the traditional, now-defunct sense" but instead are claiming that "each party should ultimately bear the percentage of fault assigned to it by the factfinder."[101] Accordingly, TPG Claimants contend that "[c]ontribution and the allocation of fault among responsible actors are entirely consistent with both maritime comparative-fault principles and Louisiana law."[102]

The Court finds that, under Louisiana law, TPIC is entitled to judgment as a matter of law regarding TPG Claimants' non-contractual indemnity and/or contribution claim. "When a party seeks a non-contractual right to indemnification,

---

explained in the Order and Reasons herein, the MSA's choice of law provision selecting Louisiana law is valid and enforceable under federal maritime law. Therefore, the Court denies as moot TPG Claimants' Motion for Partial Summary Judgment on Maritime Contract Classification because Louisiana law applies regardless of whether the MSA is non-maritime or maritime. R. Doc. 144.

[99] In a separate Order and Reasons, the Court has determined that any determination as to the enforceability of the contractual indemnity provisions in an MSA is premature under the LOAIA, as there has not yet been a finding of liability as to any indemnitee.

[100] R. Doc. 81-2 at pp. 8–9.

[101] R. Doc. 85 at p. 16.

[102] *Id.*

as is the situation here, 'the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party.'"[103] Further, "if the parties have included an enforceable choice of law clause in their contract, the law that the parties have chosen will govern the claim for contribution or indemnity."[104] Therefore, having previously determined that Louisiana law governs the contractual defense and indemnity claim, the Court turns to Louisiana law to analyze TPG Claimants' non-contractual indemnity and/or contribution claim.

Under Louisiana law, "[i]ndemnity shifts the entire loss from a tort-feasor only technically or constructively at fault to one primarily responsible for the act that caused the damage."[105] "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement."[106]

"Louisiana law allows claims for tort indemnity only when the third-party plaintiff's negligence is passive or its fault is only technical or theoretical."[107] "In the absence of an express contractual provision, a claim for legal indemnity "arises only when the fault of the person seeking indemnification is solely constructive or derivative, from failure or omission to perform some legal duty, and may only be had against one who, because of his act, has caused such constructive liability to be

---

[103] *Champagne v. Nautical Offshore Corp.*, No. Civ.A. 01-3123, 2002 WL 31387134, at *3 (E.D. La. Oct. 22, 2002)(Vance, J.)(quoting *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 235 (5th Cir. 1985)).

[104] *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 n.7 (5th Cir. 1992).

[105] *Green v. TACA Intern. Airlines*, 304 So. 2d 357, 359 (La. 1974).

[106] *Nassif v. Sunrise Homes, Inc.*, 98-3193, p. 3 (La. 6/29/99), 739 So. 2d 183, 185.

[107] *Lombard v. New Orleans Naval Support Activity*, No. Civ.A.03–3020, Civ.A.04–2296., 2004 WL 2988483, at *5 (E.D. La. Dec. 10, 2004)(Africk, J.)(citing *Threlkeld v. Haskins Law Firm,* 922 F.2d 265, 267 (5th Cir.1991)).

imposed."[108] "As such, a party who is actually negligent or actually at fault cannot recover tort indemnity."[109]

Here, in their Amended Answer and Claim, TPG Claimants asserts as to the following:

> The TPG Parties aver that the injuries and damages alleged by George Walcott and Evelyn Walcott were not caused by the fault, negligence, acts, omissions or culpable conduct of the TPG Parties, but were caused, in whole or in part, by the faults, negligent acts, omissions or culpable conduct of Petitioner and/or their employees, agents, servants and/or other persons, for none of whom the TPG Parties are liable.
>
> . . . .
>
> To the extent the TPG Parties are held liable for the injuries alleged by the Walcotts, the TPG Parties are entitled to complete non-contractual indemnity and/or contribution from Petitioner, pursuant to the General Maritime Law, because of its negligent contribution to the event leading to any such liability, together with interest, costs, and attorneys' fees.[110]

Based on the above assertions, TPG Claimants are not entitled to non-contractual tort indemnity. TPG Claimants assert that the injuries to the Walcotts were caused, in whole or in part by the "faults," "negligent acts," or "culpable conduct" of TPIC.[111] Thus, because, "the fault alleged against the would-be indemnitee is actual or active, tort indemnity is unavailable."[112] Summary judgment is thus granted in favor of TPIC as to TPG Claimants' non-contractual indemnity claim.

---

[108] *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co., Inc.*, 151 F. Supp. 3d 715, 721 (E.D. La. Dec. 16, 2015)(Barbier, J.)(citation modified).

[109] *Hamway v. Braud*, 2001-2364, p. 4 (La.App. 1 Cir. 11/8/02), 838 So. 2d 803, 806.

[110] R. Doc. 12 at p. 13.

[111] *Id.*

[112] *Snyder v. Asercion*, Civil Action No. 13–4752, 2013 WL 6004052, at *4 (E.D. La. Nov. 13, 2013)(Berrigan, J.).

Nor is contribution available to TPG Claimants. "Contribution permits a tortfeasor who has paid more than his share of a *solidary obligation* to seek reimbursement from the other tortfeasors for their respective shares of the judgment, which shares are proportionate to the fault of each."[113] Therefore, "[c]ontribution is allowed only among tortfeasors who are solidarily liable."[114] Louisiana Civil Code art. 2324 "only permits intentional or willful tortfeasors to be held liable *in solido*."[115] Thus, because TPG Claimants have not asserted an intentional tort against TPIC, solidary liability cannot exist between TPIC and TPG Claimants.[116] Therefore, the Court grants summary judgment insofar as TPG Claimants assert a non-contractual claim for contribution.

Although TPG Claimants do not have a claim for non-contractual indemnity and/or contribution, they are not without recourse. "Absent a valid claim for tort indemnity, comparative fault principles apply in this case."[117] Louisiana Civil Code art. 2323(A)(1) provides that:

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault attributable to all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute . . . .[118]

---

[113] *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co., Inc.*, 151 F. Supp. 3d 715, 721 (E.D. La. Dec. 16, 2015)(Barbier, J.)(citation modified).

[114] *Fucich Contracting, Inc. v. Shread-Kuyrkendall and Associates, Inc.*, Civil Action No. 18-2885, 2019 WL 6877646, at * 7 (E.D. La. Dec. 17, 2019)(Ashe, J.)(citation modified).

[115] *Id.* (citing LA. CIV. CODE art. 2324).

[116] *See* R. Doc. 12.

[117] *Lombard*, 2004 WL 2988483, at *10.

[118] LA. CIV. CODE art. 2323(A)(1).

Further, as explained by the Louisiana Supreme Court:

> [T]he language of Article 2324(B) is equally clear. It provides that in non-intentional cases, liability for damages caused by two or more persons *shall* be a joint and divisible obligation. Each joint tortfeasor *shall not* be liable for more than his degree of fault and *shall not* be solidarily liable with any other person for damages attributable to the fault of that other person. This provision abolishes solidarity among non-intentional tortfeasors, and makes each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to Article 2323.[119]

Applying the above principles, insofar as TPG Claimants assert a non-contractual tort claim against TPIC, the Court finds that comparative fault is applicable. The parties agree as much.[120]

### IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that TPIC's Motion for Summary Judgment [121] is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that TPIC's Motion for Summary Judgment[122] is **DENIED** as to TPG Claimants' contractual indemnity and defense claims as set forth in a separate Order and Reasons.

---

[119] *Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism*, 2002-0563, pp. 11 – 12 (La. 10/15/02), 828 So. 2d 530, 537.

[120] *See* R. Doc. 85 at p. 16 ("TPG's position is straightforward: each party should ultimately bear the percentage of fault assigned to it by the factfinder."); R. Doc. 86 at p. 8 ("TPIC agrees that under the General Maritime Law, each party bears the percentage of fault assigned to it and TPIC is well mindful of that consideration.").

[121] R. Doc. 81.

[122] *Id.*

**IT IS FURTHER ORDERED** that TPIC's Motion for Summary Judgment[123] is **GRANTED** as to TPG Claimants' claims for non-contractual indemnity and/or contribution.

**IT IS FURTHER ORDERED** that TPG Claimants' Motion for Partial Summary Judgment on Maritime Contract Classification[124] is **DENIED AS MOOT.**

New Orleans, Louisiana, May 17, 2026.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[123] *Id.*
[124] R. Doc. 144.