**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE: IN THE MATTER OF TEXAS PETROLEUM INVESTMENT COMPANY**

**CIVIL ACTION**

**NO. 24-2344**

**SECTION: "D" (2)**

**ORDER AND REASONS**

Before the Court is a Motion for Summary Judgment filed by Taylors International Services, Inc. ("Taylors").[1]  The Production Group, LLC ("TPG") and David Hayes (together, "TPG Claimants") have filed an Opposition.[2]  Texas Petroleum Investment Company ("TPIC") has also filed an Opposition.[3] Taylors has filed a Reply.[4] Also before the Court is a Motion for Summary Judgment filed by National Casualty Company and Scottsdale Insurance Company ("Underwriters").[5] TPG Claimants have filed an Opposition,[6] and Underwriters have filed a Reply.[7]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** Taylors' Motion for Summary Judgment and further **GRANTS** Underwriters' Motion for Summary Judgment.

---

[1] R. Doc. 145.
[2] R. Doc. 156.
[3] R. Doc. 159.
[4] R. Doc. 165.
[5] R. Doc. 148.
[6] R. Doc. 158.
[7] R. Doc. 168.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[8]

This limitation action arises out of an early morning April 10, 2024 allision involving TPIC's Vessel LA 9395[9] on the inland waters of Plaquemines Parish, Louisiana (the "allision").[10] TPIC owned and operated South Pass 24 ("SP-24"), an oil and gas production platform situated in Plaquemines Parish, Louisiana.[11] As part of a routine crew-change, the Vessel departed TPIC's SP-24 in the predawn hours to travel to Venice, Louisiana.[12] David Hayes, a production operator employed by The Production Group, LLC, operated the Vessel, and George Walcott, a steward employed by Taylors International Services, Inc., was a passenger in the Vessel.[13] While en route to Venice, the Vessel allided with a submerged obstruction, injuring Walcott.[14]

At all relevant times herein, George Walcott ("Walcott") was assigned to work on TPIC's SP-24 pursuant to a June 28, 2018 Master Services Agreement (the "MSA") between TPIC and Taylors.[15] The MSA provided, in pertinent part:

Company: TEXAS PETROLEUM INVESTMENT COMPANY

. . . .

Contractor: <u>Taylors International Services,</u> Inc

---

[8] In a previous Order and Reasons, the Court recited the factual and procedural background of this matter in detail. *See* R. Doc. 91. The Court therefore provides the factual and procedural background solely as relevant to the instant Motion.

[9] Vessel La 9395 is also referred to as the M/V SYDNEY. The Court will refer to it as the "Vessel" throughout this Order and Reasons.

[10] R. Doc. 148-17 at p. 1.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at p. 2.

[15] *Id.* at p. 1.

. . . .

6.7 In order to comply with the public policy of Louisiana, Contractor shall procure and shall cause Company to be separately invoiced for the underwriting and premium costs of the waivers of subrogation and additional named insured endorsements required herein as well as specific named additional insured coverage. The amount charged to Company for the underwriting cost shall be requested at a rate based upon the gross revenues paid to Contractor for the work performed by Contractor under this Agreement and shall be separately calculated on an annual basis and paid by Company directly to Contractor's insurer or its designated agent. Payment by Company shall constitute an acknowledgement by the insurer that Company has borne the actual cost of the insurance coverage provided and is in compliance with Louisiana Revised Statutes 9:2780. Upon payment by Company of the underwriting costs on an annual audited basis, the underwriters shall be required by Contractor to acknowledge the existence of coverage as required by this Agreement for all occurrences during the applicable policy year, even though the payment may not yet have been issued or received by the underwriter prior to the date of the occurrence.

. . . .

7.2 CONTRACTOR AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY, ITS OFFICERS, DIRECTORS, EMPLOYEES, JOINT OWNERS, AND THEIR INVITEES, AND ANY CUSTOMER FOR WHOM COMPANY IS PERFORMING SERVICES (HEREINAFTER COLLECTIVELY REFERRED TO AS "COMPANY GROUP") AND ALL OF COMPANY GROUP'S INSURERS, FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE, BREACH OF CONTRACT OR WARRANTY, OR FAULT (ACTIVE OR PASSIVE) OF ANY PARTY OR PARTIES INCLUDING THE SOLE, JOINT OR CONCURRENT NEGLIGENCE, INCLUDING GROSS NEGLIGENCE, OF COMPANY GROUP, ANY THEORY OF STRICT LIABILITY OR STATUTORY LIABILITY AND DEFECT OF PREMISES, OR THE UNSEAWORTHINESS OF ANY VESSEL (WHETHER OR NOT PREEXISTING THE DATE OF THIS CONTRACT), ARISING IN CONNECTION HEREWITH IN FAVOR

OF CONTRACTOR, CONTRACTOR'S EMPLOYEES, CONTRACTOR'S SUBCONTRACTORS OR THEIR EMPLOYEES, OR CONTRACTOR'S INVITEES ON ACCOUNT OF BODILY INJURY, DEATH OR DAMAGE TO PROPERTY.

. . . .

7.6 Notwithstanding anything to the contrary contained elsewhere herein, neither Contractor Group nor Company Group shall be liable to the other for any consequential, incidental, indirect, exemplary or punitive damages of any kind or character, including, but not limited to, loss of use, loss of profit, loss of revenue, loss of product or production, reservoir damage, or loss of hole, whenever arising under this Agreement or as a result of, relating to or in connection with the work hereunder, and no claim for synch [sic] damages shall be made by either Contractor Group nor Company Group, without regard to the cause or causes thereof or the negligence, breach of contract or warranty or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence, including gross negligence, of Company Group, Contractor Group, or any other party, any theory of strict liability, statutory liability, defect of premises, or the unseaworthiness of any vessel (whether or not pre-existing the date of this Contract).

. . . .

11.3 This Agreement shall be governed, construed and interpreted in accordance with the Laws of the State of Louisiana.[16]

In addition to a previous policy,[17] National Casualty Company[18] issued a Commercial Marine Liability Insurance policy, bearing No. OMO0026771, in favor of Taylors for a period beginning February 1, 2024 and ending on February 1, 2025 ("Taylors' 2024-2025 Policy").[19] On January 29, 2024, HUB International Gulf South ("HUB"), Taylors' insurance broker, issued a letter to TPIC providing TPIC with the

---

[16] R. Doc. 148-2 at pp. 1–15.

[17] Underwriters advise that "[p]rior to the inception of the 2024-2025 National Casualty Policy, National Casualty issued a Commercial Marine Liability Insurance bearing Policy No. OMO0026723 for the policy period from February 1, 2023, to February 1, 2024 . . . ." R. Doc. 148-1 at p. 5.

[18] Both National Casualty Company and Scottsdale Insurance Company are wholly owned subsidiaries of Nationwide Mutual Insurance Company. *See* R. Docs. 71 and 72.

[19] R. Doc. 148-3 at p. 31.

ability to become an additional insured under Taylors' 2024-2025 Policy.[20] That letter provides in pertinent part:

> In reviewing our client's contract we noticed that you have made reference to the Louisiana Oilfield Anti-Indemnity Act and the Marcel exception. As a requirement of your company's Contract Master Service Agreement, we take this opportunity to offer the Specific Additional Insured endorsement's under our client's General Liability and Umbrella policies. In order for the requested coverage's [sic] to be endorsed to our insured's policies the attached invoice must be paid as required by Louisiana state statute. If we do not receive payment coverage will not be requested and no coverage will be afforded.[21]

In a pricing memorandum that was attached to its January 29, 2024 letter, HUB reiterated to TPIC that "coverage is bound upon receipt of funds at the remittance address below."[22]

On April 11, 2024, the day following the allision, TPIC's Human Resources Manager sent the following email to HUB: "[o]ur records indicate that the Marcel coverage for Taylors International has expired and we have not received a renewal invoice. If Taylors is still your client, can you please provide us with an invoice so we can renew the Marcel coverage?"[23] Roughly twenty minutes later, HUB's customer service representative responded, "[p]lease see attached certificate, Marcel letter and invoice that was mailed on 1/30/2024."[24] Thereafter, on April 26, 2024, TPIC issued a check to HUB in the amount of $2,621.25 for additional insured coverage under

---

[20] R. Doc. 148-10.
[21] *Id.* at p. 3.
[22] *Id.* at p. 1.
[23] R. Doc. 148-11 at p. 1.
[24] *Id.* at p. 2.

Taylors' 2024-2025 Policy.[25] "Texas Petroleum Investment Company and Company Group" were added as additional insureds through the execution of Endorsement No. 6 to Taylors' 2024-2025 Policy ("Endorsement No. 6").[26] Endorsement No. 6 became effective at 12:01 a.m. on April 26, 2024.[27]

On September 26, 2024, TPIC filed a Complaint for Exoneration from and/or Limitation of Liability in this Court.[28] On January 5, 2026, TPG Claimants filed a Third-Party Complaint against Taylors and Underwriters, asserting contractual defense and indemnity, additional insured status and insurance coverage, and breach of contract claims against Taylors.[29] TPG Claimants also assert a breach of insurance contract claim against Underwriters, maintaining that Underwriters "owe[] a duty to TPG and Mr. Hayes as additional insureds to provide coverage for liabilities arising from the Walcotts' claims[]" based on Endorsement No. 6.[30]

### A.    Taylors' Motion for Summary Judgment

Taylors filed the instant Motion for Summary Judgment on March 16, 2026, moving for the dismissal of "all claims of third-party plaintiffs, The Production Group ('TPG') and David Hayes ('Hayes')."[31] Taylors asserts that the MSA between TPIC and Taylors is not a maritime contract, and therefore, the MSA is governed by

---

[25] R. Doc. 148-14. The Court notes that the check was actually issued on April 22, 2024 but not marked "received" by HUB until April 26, 2024. *Id.* In any event, payment was not issued and/or received until after the April 10, 2024 allision. *See* R. Doc. 148-14.
[26] R. Doc. 148-15.
[27] *Id.* at pp. 1–4. The allision occurred on April 10, 2024.
[28] R. Doc. 1.
[29] R. Doc. 93 at pp. 9–12.
[30] *Id.* at p. 10.
[31] R. Doc. 145.

Louisiana law pursuant to the MSA's choice of law proviso.[32] Taylors further argues that the MSA's defense and indemnity provisions requiring Taylors to indemnify TPIC are void pursuant to Louisiana law, specifically, the Louisiana Oilfield Anti-Indemnity Act ("LOAIA").[33]

Furthermore, Taylors contends that the MSA unambiguously defines "Company" and "Company Group" separately, defining "Company" as TPIC and "Company Group" as "Company, its officers, Directors, Employees, Joint Owners, and their Invitees, and any customer for whom Company is performing services."[34] Taylors argues that third-party Plaintiffs "TPG and Hayes may not append any alleged duty owed by Taylors specifically to the 'Company' to themselves as 'Company Group' in this matter."[35] Lastly, Taylors asserts that TPG Claimants are not entitled to additional insured status under the MSA, as "TPG and Hayes' [sic] have admitted that they did not request, nor pay, for *Marcel* coverage for the period when the subject allision occurred."[36] Thus, according to Taylors, "[i]t is undisputed that the MSA between TPIC and Taylors is governed by the LOAIA, which bars both TPIC and its purported invitees, TPG and Hayes'[] claims for defense and indemnity from Taylors."[37]

TPG Claimants oppose Taylors' Motion on three grounds.[38] First, TPG Claimants contend that the "LOAIA voids indemnity only to the extent an indemnitee

---

[32] R. Doc. 145-1 at pp. 4–6.
[33] *Id.* at pp. 8–9 (citing La. R.S. § 9:2780).
[34] R. Doc. 145-1 at p. 11.
[35] *Id.* at p. 12.
[36] *Id.* at p. 13.
[37] *Id.* at pp. 13–14.
[38] R. Doc. 156.

seeks protection for its own negligence or fault, and TPG's pending borrowed servant motion directly affects that analysis."[39] Second, TPG Claimants assert that "Taylors mischaracterizes TPG's and Hayes's responses to requests for admission, which state only that TPG and Hayes did not directly request or pay for *Marcel* coverage while expressly reserving whether any other entity did."[40] Third, TPG Claimants submit that "the record affirmatively shows that TPIC was separately invoiced for the *Marcel*-related coverage and paid that invoice, and that the endorsement at issue identifies the added insured as 'Texas Petroleum Investment Company and Company Group.'"[41] Thus, according to TPG Claimants, Taylors' Motion should be denied.[42]

In Reply, Taylors reiterates that the MSA's indemnity and defense provisions are barred by the LOAIA.[43] Taylors further argues that TPG Claimants "seek to muddy the waters of the clear and explicit terms of the MSA between Taylors and TPIC to manufacture obligations from Taylors that inure to their benefit, but a plain reading of the MSA reveals they are not entitled to such benefits as a matter of law."[44] Thus, Taylors contends that its Motion should be granted.[45]

## B.   Underwriters' Motion for Summary Judgment

Also on March 16, 2026, Underwriters filed the instant Motion for Summary Judgment against TPG Claimants, requesting that the Court grant "summary

---

[39] *Id.* at pp. 1–2. In light of the Court's finding that David Hayes was a borrowed servant of TPIC, this argument is now moot. *See* R. Doc. 228.

[40] *Id.* at p. 2.

[41] *Id.*

[42] *Id.* at p. 10.

[43] R. Doc. 165 at p. 1.

[44] *Id.* at p. 3.

[45] *Id.* at p. 4.

judgment in their favor and dismiss[] the claims asserted against them by" TPG Claimants.[46] Underwriters contend that:

> [T]he policy endorsement that TPG and Hayes allege provides coverage in their favor only extends coverage for losses arising from Taylors' ongoing operations for the purported insured. The Walcotts' claims against TPG and Hayes do not arise from Taylors' ongoing operations in favor of TPG because neither Walcott nor any other Taylors employee performed any work whatsoever in favor of TPG. As such, the Walcotts' claims against TPG and Hayes fall outside the terms of the policy.[47]

Thus, Underwriters assert that their Motion for Summary Judgment against TPG Claimants should be granted.[48]

TPG Claimants oppose the Motion.[49] TPG Claimants contend that "Underwriters have not carried their burden to show that they are entitled to judgment as a matter of law. Their motion rests on a narrow reading of the endorsement, an overly restrictive view of the 'ongoing operations performed for that insured' language, and an incomplete treatment of both the 'No Known Loss' letter and the cited exclusions."[50] Thus, TPG Claimants submit that "[a]t minimum, genuine disputes of material fact remain, and summary judgment should be denied."[51]

In Reply, Underwriters make five arguments.[52] First, Underwriters contend that the LOAIA prohibits indemnity coverage in favor of TPIC for TPG Claimants'

---

[46] R. Doc. 148.
[47] *Id.* at pp. 2–3.
[48] *Id.* at p. 23.
[49] R. Doc. 158.
[50] *Id.* at pp. 1–2.
[51] *Id.* at p. 2.
[52] R. Doc. 168.

claims.[53] Second, Underwriters argue that La. R.S. § 22:860 bars coverage in favor of TPIC and TPG Claimants due to TPIC's purposeful failure to disclose the allision to Underwriters in its additional insured application.[54] Third, Underwriters maintain that the Additional Insured Endorsement, namely Endorsement No. 6's schedule naming TPIC and "Company Group[,]" does not cover George Walcott's claims against Underwriters.[55] Fourth, Underwriters argue that, even if the Walcotts were additional insureds, the aircraft, auto, or watercraft exclusions in Taylors' 2024-2025 Policy bars coverage for the Walcotts' claims.[56] Fifth, Underwriters argue that if the Court finds that George Walcott is a borrowed employee of TPIC, then he would be an employee of an insured and, therefore, "the Walcotts' claims against TPG and Hayes are unambiguously excluded pursuant to the Employer's Liability Exclusion."[57] Accordingly, Underwriters reiterate that their Motion for Summary Judgment against TPG Claimants should be granted.[58]

On May 17, 2026, the Court denied without prejudice Taylors' and Underwriters' instant Motions for Summary Judgment, finding that "any right to collect on an indemnity claim must wait for determination until after a judgment is entered or a finding of liability has been determined."[59] This matter proceeded to a bench trial on May 18, 2026.[60] On the second day of the bench trial, Counsel for

---

[53] *Id.* at p. 1.
[54] *Id.* at p. 5.
[55] *Id.* at p. 6.
[56] *Id.* at p. 8.
[57] *Id.* at p. 10. The Court has previously found that David Hayes was a borrowed employee of TPIC in a May 15, 2026 Order and Reasons. *See* R. Doc. 228.
[58] R. Doc. 168 at p. 10.
[59] R. Doc. 234 at p. 4.
[60] R. Doc. 236.

George Walcott and Evelyn Walcott advised the Court that George Walcott and Evelyn Walcott dismissed all claims against all parties with prejudice in light of a settlement agreement.[61] The Court inquired with the parties with remaining claims in this matter regarding their intentions on proceeding with the trial, and all parties agreed to submit their remaining claims on the briefs previously submitted to the Court.[62] The Court therefore reconsiders both Taylors' and Underwriters' Motions for Summary Judgment in light of the settlement reached at trial and the record evidence.

Thereafter, on June 10, 2026, the assigned Magistrate Judge informed the Court that the remaining claims between TPIC, Underwriters, and Taylors have been amicably resolved.[63] Accordingly, only TPG Claimants have claims remaining in this matter—with claims asserted against TPIC, Taylors, and the Underwriters.[64] In this Order and Reasons, the Court only addresses TPG Claimants' remaining claims against Taylors and Underwriters.[65]

On June 12, 2026, the Court ordered supplemental briefing on the issue of whether TPG Claimants still have a viable claim for a breach of contract against Underwriters and viable claims against Taylors for breach of contract, additional

---

[61] R. Doc. 237.
[62] *Id.*
[63] R. Doc. 238 at p. 1.
[64] *See* R. Docs. 12 and 93. The Court only addresses TPG Claimants' claims against Taylors and Underwriters in the instant Order and Reasons. In a separate Order and Reasons, the Court will address TPG Claimants' claims against TPIC.
[65] The Court will address TPG Claimants' claims against TPIC in a separate Order and Reasons.

insured status and insurance coverage, and contractual defense and indemnity claims under Louisiana law in light of the settlement agreements in this matter.[66]

In TPG Claimants' supplemental brief, TPG Claimants contend that their claims against Underwriters and Taylors remain viable based on three grounds.[67] As explained by TPG Claimants:

> First, TPG, as well as David Hayes, fall within TPIC's protected "Company Group" under the Taylors/TPIC MSA, and the Walcotts' claims fall within Taylors' defense and indemnity obligations. Second, the Louisiana Oilfield Anti-Indemnity Act . . . does not bar TPG's contractual defense and indemnity claims because there has been no finding of independent TPG fault. Third, TPG has a viable insurance-based claim arising from Taylors' insurance-procurement obligations, TPIC's payment of the Marcel premium, and Endorsement No. 6, which identifies the added insureds as "Texas Petroleum Investment Company and Company Group."[68]

Thus, according to TPG Claimants, "its claims against Taylors and Underwriters remain viable. The settlement resolved Plaintiffs' claims; it did not adjudicate, release, or extinguish TPG's preserved contractual, insurance-procurement, and coverage claims against Taylors and Underwriters."[69]

In response, Taylors and Underwriters filed a joint supplemental brief.[70] As to TPG Claimants' breach of contract claims against them, Taylors and Underwriters argue that "it is undisputed that TPG was not a signatory to the TPIC/Taylors MSA[,]" and "[t]he law is clear that, as a general rule, a party who is not a signatory to a

---

[66] R. Doc. 239.
[67] R. Doc. 247 at p. 1.
[68] *Id.* at pp. 1–2.
[69] *Id.* at p. 10.
[70] R. Doc. 249.

contract has no cause of action for its alleged breach[.]"[71] According to Taylors and Underwriters, "[t]he only conceivable legal vehicle whereby TPG would be able to present a claim for breach of contract is if it could prove it met the legal requirements to be a third-party beneficiary of the agreement[,]" and "TPG did not even make this argument."[72] Nonetheless, Taylors and Underwriters assert that any third-party beneficiary argument fails because even though the MSA establishes that TPG Claimants would be a part of TPIC's "Company Group[,]" there was no consideration for the contract and any benefit bestowed upon TPG Claimants was merely incidental.[73]

Regarding TPG Claimants' additional insured claims, Taylors and Underwriters maintain that "TPG and Hayes cannot point to any legal basis to suggest Underwriters are bound to provide retroactive coverage in their favor, particularly in light of the plain terms of Endorsement 6 and Underwriters' repeated statements that coverage is only bound after payment is made."[74] In sum, Taylors and Underwriters assert that "TPG's claim for breach of contract against Taylors fall[s] far short of the legal requirements necessary to sustain its burden of proof on that issue[]" and that "TPG's claim against Underwriters for coverage as an additional insured[] also fails to meet the legal requirements to sustain its burden."[75]

---

[71] *Id.* at p. 2 (emphasis removed).
[72] *Id.*
[73] *Id.*
[74] *Id.* at p. 8.
[75] *Id.* at p. 10.

With leave of Court, TPG Claimants filed a memorandum in reply.[76] Addressing its breach of contract claims, TPG Claimants submit that Taylors and Underwriters' third-party beneficiary, or stipulation *pour autrui*, arguments fail because TPG Claimants are not relying on a vague implied benefit.[77] Instead, according to TPG Claimants, they are relying on Section 7.2 of the MSA, which provides indemnification protection to TPG Claimants pursuant to the term "Company Group[.]"[78] Further, TPG Claimants assert that their benefit from the MSA is not incidental and that calling such indemnification protection incidental would "render the defined-group structure meaningless. Standard MSAs allocate risk through defined groups—Company Group, Contractor Group, employees, officers, directors, etc.—many of whom are not signatories. If every non-signatory member of a defined Company Group receives only an incidental benefit, the Company Group language protects no one beyond the signatory."[79]

As to their additional insured claims, TPG Claimants submit that they do "not seek to create new coverage after a known loss. TPG seeks to enforce Taylors' pre-loss obligation to procure annual Company Group coverage, including Article 6.7's requirement that Underwriters acknowledge coverage for all occurrences during the applicable policy year upon TPIC's payment of the annual premium."[80]

---

[76] R. Doc. 252.
[77] *Id.* at p. 3.
[78] *Id.* at pp. 3–4.
[79] *Id.* at p. 4.
[80] *Id.* at p. 5.

Also with leave of Court, Taylors and Underwriters have filed a sur-reply.[81]

Taylors and Underwriters submit the following:

> Taylors does not dispute that TPG was a member of the "Company Group" pursuant to TPIC/Taylors' MSA and, given the appropriate circumstances, would be afforded the protection the MSA intended to provide. Contrary to TPG's suggestion, Taylors is in no way stating that TPG, as a "non-signatory" to the MSA removes it as a potential indemnitee. That is not the argument Taylors is making and illustrates that TPG misses the point of Taylors' position as outlined in its original memorandum. TPG seems to forget that its claim against Taylors as stated by the Court in its directive instructing the parties to file post-trial memorandum was pertaining to TPG's claim against Taylors for "breach of contract." On that issue, TPG is not seeking defense/indemnity as a member of TPIC "Company Group" in the TPIC/TPG MSA. It is seeking defense/indemnity because Taylors failed to have its insurers acknowledge Article 6.7 of the TPIC/Taylors MSA. In other words, if the Court finds Underwriters do not owe defense/indemnity pursuant to the MSA, the loss of that benefit flows through Taylors failing to have its Underwriters acknowledge they would be bound by that Article, thereby "breaching" that provision of the "contract" between TPIC and Taylors. It is in that context that Taylors contends that TPG has failed to state a claim for breach of contract, given that TPG was a non-signatory to the contract -and, that as a non-signatory it fails to qualify, under the law, as a third-party beneficiary to that agreement. Nothing more.[82]

Thus, according to Taylors and Underwriters, TPG Claimants' claims asserted against them are barred under Louisiana law.[83]

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the

---

[81] R. Doc. 259.
[82] *Id.* at pp. 1–2 (citation modified).
[83] *Id.* at p. 3.

movant is entitled to judgment as a matter of law."[84]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[85]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[86]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[87]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[88]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[89]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[90]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the

---

[84] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[85] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

[86] *Anderson*, 477 U.S. at 248.

[87] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[88] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[89] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[90] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

reasonable fact-finder to return a verdict in favor of the moving party."[91] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[92] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[93]

## III.    ANALYSIS

Taylors and Underwriters both seek summary judgment TPG Claimants' claims asserted against them.[94] As an initial matter, the Court first determines whether the MSA is governed by general maritime law or Louisiana law. The Court then determines the viability of TPG Claimants' remaining claims against Taylors and Underwriters. For the reasons set forth below, the Court finds that Louisiana law governs the MSA and dismisses TPG Claimants' remaining claims against Taylors and Underwriters.

### A.    Louisiana law applies to the MSA.

As a threshold issue, the Court first resolves whether Louisiana law or general maritime law is applicable to the instant dispute. All parties seemingly concede that

---

[91] *Id.* at 1265.
[92] *See Celotex*, 477 U.S. at 322-23.
[93] *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).
[94] R. Docs. 145 and 148.

17

Louisiana law governs the MSA.[95] The Court agrees. In a previous Order and Reasons, the Court held that a separate Master Services Agreement between TPIC and The Production Group, LLC was governed by Louisiana law, regardless of whether that Master Services Agreement was classified as maritime or non-maritime.[96] The same analysis applies to the instant MSA between Taylors and TPIC.

If the MSA is classified as non-maritime, Louisiana law would apply either through the Outer Continental Shelf Lands Act or from Book IV of the Louisiana Civil Code.[97] Similarly, if the MSA is classified as maritime, the MSA's choice of law provision is valid and enforceable under federal maritime law unless two narrow exceptions apply.[98] The pertinent proviso in the MSA provides that "[t]his Agreement shall be governed, construed and interpreted in accordance with the Laws of the State of Louisiana."[99] Nor do the two exceptions to the MSA's choice of law provision apply, as the Fifth Circuit has determined that the LOAIA "does not conflict with any fundamental purpose of maritime law[,]"[100] and it is axiomatic that Louisiana (i.e.,

---

[95] *See* R. Docs. 145, 148, 247, 249, and 252.

[96] *See* R. Doc. 133 at pp. 11–17.

[97] *See id.* at pp. 12–15.

[98] *See Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC,* 601 U.S. 65, 76 (2024). In *Great Lakes Insurance SE*, the Supreme Court held that "[a]s a matter of federal maritime law, choice-of-law provisions in maritime contracts are presumptively enforceable." *Id.* at 76. The Supreme Court further explained that "[o]f course, to say that choice-of-law clauses are presumptively enforceable as a matter of federal maritime law means that there are exceptions when the clauses are not enforceable . . . . In particular, the parties agree that courts should disregard choice-of-law clauses in otherwise valid maritime contracts when the chosen law would contravene a controlling federal statute . . . or conflict with an established federal maritime policy . . . . The parties further agree that, as a matter of federal maritime law, courts may disregard choice-of-law clauses when parties can furnish no reasonable basis for the chosen jurisdiction." *Id.* (citation modified).

[99] R. Doc. 148-2 at p. 15.

[100] *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1518 (5th Cir. 1988).

the chosen jurisdiction) has a substantial relationship to the parties in the instant dispute.[101] Accordingly, as the parties suggest, Louisiana law governs the MSA.

### B.    TPG Claimants' breach of contract claims fail as a matter of law.

TPG Claimants assert that "Section 7.2 of the Taylors/TPIC MSA grants TPG the right to defense and indemnity from Taylors[,]" as "Taylors agreed to 'release, protect, defend, indemnify and hold harmless' TPIC's Company Group from claims by Taylors employees for bodily injury, 'without limit and without regard to the cause or causes thereof or the negligence, breach of contract or warranty, or fault' of any party."[102] Taylors and Underwriters, in turn, argue that "TPG as a non-signatory to the MSA between TPIC and Taylors, who also fails to meet the requirements to qualify as a third-party beneficiary, cannot state a claim to recover damages for alleged breach of contract by Taylors."[103] The Court agrees.

"It is well established that Louisiana provides no action for breach of contract in the absence of privity between the parties."[104] "However, one exception to this rule of privity is when a contract stipulates a benefit for a non-party."[105] Louisiana Civil Code art. 1978 provides that "[a] contracting party may stipulate a benefit for a third

---

[101] *See* R. Doc. 233 at pp. 16–17.

[102] R. Doc. 247 at p. 4.

[103] R. Doc. 249 at p. 6.

[104] *Matthews v. Stolier*, Civil Action No. 13–6638, 2015 WL 1726211, at * 7 (E.D. La. Apr. 15, 2015)(Milazzo, J.)(citing *Louisiana Ins. Guar. Ass'n v. Rapides Parish Police Jury,* 182 F.3d 326, 331 (5th Cir.1999); *Long v. Jeb Breithaupt Design Build Inc.,* 4 So.3d 930, 941 (La. Ct.App. 2 Cir.2009); *Pearl River Basin Land & Dev. Co. v. State ex rel. Governor's Office of Homeland Sec. & Emergency Preparedness,* 29 So.3d 589, 592 (La. Ct.App. 1 Cir.2009)).

[105] *Louisiana Environmental Concepts, LLC v. BKW, Inc.*, Civil Action No. 18-12568, 2019 WL 2009242, at *4 (E.D. La. May 7, 2019)(Feldman, J.).

person called a third-party beneficiary."[106] "Under Louisiana law, such a contract for the benefit of a third party is commonly referred to as a stipulation *pour autrui*."[107]

> As explained by the Louisiana Supreme Court:

> The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof. A stipulation *pour autrui* is never presumed. The party claiming the benefit bears the burden of proof.[108]

Additionally, in determining whether contracting parties have provided a benefit for a third party, the following three elements must be met: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee."[109]

Another Section of this Court has determined that, standing alone, "a promise to indemnify does not create a stipulation pour autrui."[110] In support, that court invoked the Fifth Circuit's decision in *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.*, where the Fifth Circuit "held that the language accepting responsibility for all

---

[106] LA. CIV. CODE art. 1978.

[107] *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 2005-2364, p. 7 (La. 10/15/06), 939 So.2d 1206, 1211 (citation modified).

[108] *Id.*, 2005-2364, p. 9, 939 So.2d at 1212 (citation modified).

[109] *Id.*, 2005-2364, pp. 9–10, 939 So.2d at 1212. "The United States Court of Appeal for the Fifth Circuit has applied the same test as applied by the Louisiana Supreme Court, holding that in order to establish the third party beneficiary relationship, there must be potential for future liability with respect to the promisee, the advantage to the third party must affect the promisee in a material way, and that there are ties of kinship or other circumstances indicating that a benefit was intended." *Fairfield Royalty Corp. v. Island Operating Co., Inc.*, Civil Action No. 10–3446, 2012 WL 2716414, at *2 (E.D. La. July 9, 2012)(Lemelle, J.)(citing *Price v. Hous. Auth. of New Orleans,* 453 F. App'x 446, 450 (5th Cir. 2011)).

[110] *Branch v. Art Catering, Inc.*, Civil Action Nos. 05-1223, 06-1630, 2007 WL 1747023, at * 3 (E.D. La. June 15, 2007)(Barbier, J.).

torts does not in and of itself create a stipulation pour [autrui]."[111] The Court agrees with the above rationale and finds that the existence of an indemnification provision in the MSA alone does not prove the existence of a stipulation *pour autrui*.[112] Instead, all three elements enumerated by the Louisiana Supreme Court must be satisfied.

In this case, not all the elements of a stipulation *pour autrui* are met. TPG Claimants have not expressly addressed the first element – whether a stipulation for a third party is clear.[113] Nonetheless, TPG Claimants' principal argument is that they fall under the definition of "Company Group" in Art. 7.2 of the MSA, and therefore Taylors is required to indemnify them.[114] Art. 7.2 of the MSA provides, in pertinent part:

> CONTRACTOR AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY, ITS OFFICERS, DIRECTORS, EMPLOYEES, JOINT OWNERS, AND THEIR INVITEES, AND ANY CUSTOMER FOR WHOM COMPANY IS PERFORMING SERVICES (HEREINAFTER COLLECTIVELY REFERRED TO AS "COMPANY GROUP") . . . .[115]

Accordingly, Company Group includes TPIC (i.e., the Company) and its officers, directors, employees, joint owners, and invitees. Focusing on their status as invitees of TPIC, TPG Claimants contend that they are owed indemnification from Taylors.[116]

---

[111] *Id.* (citing *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.,* 48 F.3d 927, 932 (5th Cir.1995)).

[112] This is not to say, however, that an indemnification provision in an MSA can *never* give rise to a stipulation *pour autrui*. The Court's holding, as set forth below, is limited to the facts before this Court in this matter.

[113] *See* R. Docs. 247 and 252.

[114] *See* R. Docs. 247 and 252.

[115] R. Doc. 148-2 at p. 10.

[116] R. Doc. 247 at p. 5.

"When a maritime contract uses but does not define 'invitee,' courts in this circuit apply the definition articulated in *Blanks v. Murco Drilling Corp.*"[117] In *Blanks*, the Fifth Circuit defined an "invitee" as "'a person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage.'"[118] In an unpublished opinion, the Fifth Circuit has further noted that "*Blanks* does not define occupant, and Louisiana case law recognizes that the term is susceptible of different meanings."[119] Ultimately, the Fifth Circuit defined "occupant" is "'[o]ne who has possessory rights in, or control over, certain property or premises.'"[120]

Using the above guidance from the Fifth Circuit, TPIC was the occupant of SP-24 and the Vessel, as the owner of both, and David Hayes was operating the Vessel with permission of TPIC pursuant to the Master Services Agreement between TPIC and The Production Group, LLC.[121] Accordingly, while not readily apparent from the plain language of the MSA, the Court finds that TPG Claimants were "invitees" of TPIC pursuant to the MSA. By virtue of the fact that the Court has to turn to additional caselaw to define the terms "invitee" and "occupant[,]" an argument can be made that the stipulation for TPG Claimants (i.e., a third party) is unclear and thus the first element is not satisfied.

---

[117] *Grogan v. W&T Offshore, Inc.*, 812 F.3d 376, 379 (5th Cir. 2016)(citing *Blanks v. Murco Drilling Corp.*, 766 F.2d 891 (5th Cir. 1985)).
[118] *Id.* (quoting *Blanks*, 766 F.2d at 894).
[119] *Brown v. Sea Mar Management, LLC*, 288 Fed. Appx. 922, 925 (5th Cir. 2008)(citation modified).
[120] *Id.* (quoting BLACK'S LAW DICTIONARY 1108 (8th ed. 2004)).
[121] *See* R. Doc. 12-1.

Nonetheless, the Court finds that Art. 7.6 of the MSA ultimately proves fatal to the existence of any stipulation *pour autrui*. Art. 7.6 provides, in pertinent part:

> Notwithstanding anything to the contrary contained elsewhere herein, neither Contractor Group nor Company Group shall be liable to the other for any consequential, incidental, indirect, exemplary or punitive damages of any kind or character, including, but not limited to, loss of use, loss of profit, loss of revenue, loss of product or production, reservoir damage, or loss of hole, whenever arising under this Agreement or as a result of, relating to or in connection with the work hereunder, and *no claim for synch* [sic] *damages shall be made by either Contractor Group nor Company Group, without regard to the cause or causes thereof or the negligence, breach of contract or warranty or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence, including gross negligence, of Company Group, Contractor Group, or any other party, any theory of strict liability, statutory liability, defect of premises, or the unseaworthiness of any vessel (whether or not pre-existing the date of this Contract).*[122]

The MSA dictates no claims shall be made by TPG Claimants, as members of "Company Group[,]" for "breach of contract . . . of any party or parties including the sole, joint or concurrent negligence, including gross negligence, of Company Group, Contractor Group, or any other party, any theory of strict liability, statutory liability, defect of premises, or the unseaworthiness of any vessel."[123] Again, "[a] stipulation *pour autrui* is never presumed[,]" and "[t]he party claiming the benefit bears the burden of proof."[124] TPG Claimants have not met their burden of proof, as the MSA casts doubt on TPG Claimants' ability to sue for a breach of contract against Taylors and/or Underwriters. Accordingly, based on the record evidence before it, the Court finds that TPG Claimants are not third-party beneficiaries pursuant to the MSA and,

---

[122] R. Doc. 148-2 at p. 12 (emphasis added).
[123] *Id.* at p. 12.
[124] *Joseph*, 2005-2364, p. 9, 939 So.2d at 1212.

the Court dismisses TPG Claimants' breach of contract claim against Taylors and Underwriters.[125]

### C. TPG Claimants' additional insured claims likewise fail as a matter of law.

TPG Claimants assert that they are additional insureds on Taylors' 2024-2025 Policy via Endorsement No. 6, which adds "Texas Petroleum Investment Company and Company Group" as additional insureds.[126] Taylors and Underwriters contend, however, that Endorsement No. 6 was not in effect at the time of the April 10, 2024 allision, and therefore, TPG Claimants were not additional insureds at the time of the allision.[127] The Court agrees.

As it pertains to TPG Claimants' additional insured claims, summary judgment boils down to one simple issue of timing: whether TPIC's April 26, 2024 payment for additional insured coverage (i.e., a *Marcel* premium) on Taylors' 2024-2025 Policy requires Taylors and Underwriters to fully indemnify TPG Claimants for the Walcotts' claims arising out of the April 10, 2024 allision. For the reasons set forth below, the Court determines that it does not.

---

[125] While TPG Claimants' breach of contract claim is technically asserted pursuant to Endorsement No. 6 (R. Doc. 93), the MSA is the contract that serves as the genesis for any obligation for TPIC and "Company Group" to obtain *Marcel* coverage. Thus, because TPG Claimants are not third-party beneficiaries of the MSA, they cannot assert a breach of contract claim pursuant to Endorsement No. 6 for the same reasons why they are not third-party beneficiaries of the MSA. Only Taylors, TPIC, and Underwriters were in contractual privity to Endorsement No. 6. *See* R. Doc. 148-15 at p. 14.

[126] R. Doc. 148-3 at p. 113.

[127] R. Doc. 249.

Louisiana law invalidates certain indemnity or "knock for knock" provisions found in oil and gas contracts.[128] The LOAIA, specifically La. R.S. § 9:2780(A) and § 9:2780(B) provide as follows:

> A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
>
> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.[129]

"The term 'agreement[]' . . . means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state . . . ."[130]

---

[128] A "knock for knock" provision is an "indemnity obligation in which each party is required to indemnify the other for claims brought by its own employees." *Skipper v. A&M Dockside Repair, Inc.*, Civil Action No. 18-6164, 2019 WL 3035447, at *3 (E.D. La. July 11, 2019)(Vance, J.)(citing 1 Admiralty & Mar. Law § 5:16 (6th ed. 2018)).

[129] La. R.S. §§ 9:2780(A), 9:2780(B).

[130] La. R.S. § 9:2780(C).

The Fifth Circuit has recognized one exception to the LOAIA's prohibition on knock for knock provisions, wherein the LOAIA's prohibition does not apply if the "principal pays for or obligates itself to pay for the cost of the indemnitor obtaining the insurance coverage."[131] Such exception, often referred to as a *Marcel* premium, "is a payment in which the principal covers the entire cost of its own insurance coverage and secures an endorsement naming it as an insured in its contractor's policy, rendering the coverage enforceable without frustrating LOAIA."[132] As further explained by another Section of this Court:

> LOAIA is designed to ensure the economic burden of insurance coverage and liability does not fall on independent contractors. In *Marcel v. Placid Oil Co.*, the Fifth Circuit recognized this burden is not placed on independent contractors, even if a claim for indemnification is made, when oil companies pay for their own liability coverage or reimburse the independent contractors fully for the insurance premiums. This reimbursement for insurance coverage is known as a *Marcel* premium. When *Marcel* payments are made, the indemnity clauses of a contract are enforceable.[133]

The Fifth Circuit has noted, however, that the *Marcel* premium exception "does not apply if any material part of the cost of insuring the indemnitee is borne by the independent contractor procuring the insurance coverage."[134]

Here, the Court has already determined that Louisiana law applies to the MSA, and the parties concede that the MSA's indemnity provision falls within the

---

[131] *Borman v. Shamrock Energy Solutions, LLC.*, 421 F. Supp. 3d 382, 386 (E.D. La. 2019)(Barbier, J.)(citing *Marcel v. Placid Oil Co.*, 11 F.3d 563, 569 (5th Cir. 1994)).

[132] *Delozier v. S2 Energy Operating, LLC*, 500 F. Supp. 3d 514, 526 (E.D. La. Nov. 12, 2020)(Morgan, J.).

[133] *Id.* (citation modified).

[134] *Marcel*, 11 F.3d at 570.

LOAIA's ambit.[135] Instead, the parties disagree as to whether TPIC's April 26, 2024 *Marcel* premium payment, via Endorsement No. 6, requires Taylors and Underwriters to indemnify TPG, as "Texas Petroleum Investment Company and Company Group[.]"[136]

Under Louisiana law, "[s]ummary judgment is appropriate when there is no genuine issue of material fact that the provisions of an insurance policy do not afford coverage. Whether an insurance policy clearly and unambiguously excludes coverage is a question of law decided from the four corners of the policy."[137] As further explained by the Louisiana Supreme Court:

> An insurance policy is a contract between the parties and should be construed using the general rules for the interpretation of contracts set forth in our Civil Code. Interpretation of an insurance policy is the determination of the common intent of the parties – this analysis starts by examining the words of the policy itself. Words and phrases in an insurance policy must be given their generally prevailing meaning unless they are words of art or have acquired a technical meaning. When the words of an insurance policy are clear and explicit and do not lead to absurd consequences, courts must enforce the language as written. Courts lack the authority to alter the terms of an insurance policy under the guise of interpretation and should not create an ambiguity where none exists. An insurance policy is construed against an insurer and in favor of coverage only when an ambiguity remains after applying the aforementioned general rules for the interpretation of contracts. The language of an insurance policy may be general without being ambiguous.[138]

---

[135] *See* R. Docs. 145, 148, 247, 249, 252. While all parties agree that the MSA is an oil and gas contract that *could* be impacted by the LOAIA, all parties do not agree that the LOAIA's prohibition on knock for knock provision applies without a finding of fault at trial. *See* R. Docs. 247 and 252.

[136] R. Doc. 148-3 at p. 113.

[137] *Kazan v. Red Lion Hotels Corporation*, 2021-01820, p. 3 (La. 6/29/22), 346 So. 3d 267, 269–70 (citation modified).

[138] *Id.*, 2021-01820, p. 3, 346 So. 3d at 270 (citation modified).

Applying the above principles of Louisiana law, the Court finds that the text of Endorsement No. 6 dictates that there is no coverage in favor of TPG Claimants for costs related to the April 10, 2024 allision.[139]

Endorsement No. 6 adds TPIC and "Company Group" as an additional insured to Taylors' 2024-2025 Policy.[140] Crucially, TPIC did not issue a check for the *Marcel* premium until April 22, 2024, which was received by HUB on April 26, 2024.[141] Accordingly, Endorsement No. 6 unambiguously states that such endorsement became effective on April 26, 2024 at 12:01 A.M.[142] Based on the four corners of Endorsement No. 6 to Taylors' 2024-2025 Policy, it is clear and unambiguous that TPG Claimants, included within the term "Company Group[,]" were not additional insureds on Taylors' 2024-2025 Policy at the time of the April 10, 2024 allision. The Court's analysis would ordinarily end here, finding that because Endorsement No. 6 did not come into effect until April 26, 2024, Underwriters and Taylors are not legally bound to indemnify TPIC and, in turn, TPG Claimants as "Company Group[.]"

TPG Claimants, however, argue that, pursuant to Article 6.7 of the MSA, it was the intent of TPIC and Taylors that TPIC and "Company Group" be afforded *Marcel* coverage for a complete policy year, even if the payment was delayed, as long as it was made.[143] According to TPG Claimants, "the MSA specifically contemplated that Marcel premiums could be paid after an occurrence without prejudicing coverage

---

[139] R. Doc. 148-3 at pp. 113–115.
[140] *Id.*
[141] R. Doc. 148-14 at p. 1.
[142] R. Doc. 148-15 at p. 1.
[143] R. Doc. 247 at pp. 9–10.

28

for members of Company Group. TPIC's payment within a few days of the incident (after receipt of the HUB invoice) was therefore consistent with the parties' annual *Marcel* premium structure."[144]

Notwithstanding the fact that Endorsement No. 6 clearly states that it has an effective date of April 26, 2024, Louisiana jurisprudence defeats TPG Claimants' assertion that the timing of Endorsement No. 6 is inconsequential. The Louisiana Court of Appeal for the Fourth Circuit has explained that "[a]n insured, when contracting for the insurance, necessarily represents that the object insured is in existence and has not already suffered the damage insured against."[145] Similarly, the Louisiana Second Circuit has stated that "no insurance company would have issued a policy covering an accident which had occurred prior to his applying for insurance. Such a loss is uninsurable. Anything otherwise is contrary to the fundamentals of Louisiana law and, more so, to the fundamentals of sound business practice or even common sense."[146] The Louisiana Second Circuit has also found that "'[i]t would seem to be too clear to admit of argument that an insurance agent has no authority to contract for liability on behalf of the principal by incurring liability for a loss which has already been incurred.'"[147]

In conformity with the above principles, the Louisiana Fourth Circuit determined that "[t]o allow a principal to secure coverage on its contractor's

---

[144] *Id.* at p. 10.

[145]  *Broome v. State Farm Mut. Auto. Ins. Co.,* 152 So. 2d 827, 829 (La. Ct. App. 4th Cir. 1963).

[146] *Brignac v. City of Monroe*, 41,207, pp. 10–11 (La. App. 2 Cir. 7/26/06), 936 So. 2d 272, 278.

[147] *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, 555 F. Supp. 2d 686, 698 (E.D. La. Apr. 2, 2008)(Africk, J.)(quoting *B.T.U. Insulators, Inc. v. Md. Cas. Co.,* 175 So.2d 899, 902 (La. Ct. App. 2d Cir. 1965)).

policy *after the loss* for which the coverage is sought is certainly beyond the intended scope of the LOAIA."[148] The Court agrees with that reasoning. Additionally, this Court has concerns that adopting TPG Claimants' argument would impose a material part of the cost to insure TPIC (i.e., the indemnitee) upon Taylors (i.e., the contractor) who is procuring the insurance coverage.[149]

Moreover, TPG Claimants' reliance on its prior course of dealings with Taylors and HUB misses the mark.[150] The fact that TPIC paid *Marcel* premiums prior to and after the April 10, 2024 allision bears no weight on the Court's analysis. The same can also be said for the amount of money TPIC paid for its *Marcel* premium in conjunction with Endorsement No. 6.[151] The fact that TPIC paid an identical *Marcel* premium price as it did for the years in which it obtained full *Marcel* coverage does not constitute grounds for a retroactive application of Endorsement No. 6. This is especially the case when it was TPIC that recognized that its "Marcel coverage . . . ha[d] expired" after the allision.[152] Finally, the endorsement for the Marcel coverage instituted after the allision clearly states that it becomes effective on April 26, 2024.[153] The Court thus determines that TPG Claimants, as the "Company Group" of TPIC, were not additional insureds under Taylors' 2024-2025 Policy at the time of the

---

[148] *Amoco Prod. Comp. v. Lexington Ins. Co.,* 98–1676, p. 4 (La. App. 1 Cir. 9/24/99) 745 So.2d 676, 681 (emphasis original).

[149] *See Marcel*, 11 F.3d at 570 (holding that the *Marcel* premium exception to the LOAIA "does not apply if any material part of the cost of insuring the indemnitee is borne by the independent contractor procuring the insurance coverage[]").

[150] *See* R. Doc. 247 at pp. 9–10.

[151] *Id.*

[152] R. Doc. 148-11 at p. 1.

[153] R. Doc. 148-15.

April 10, 2024 allision. TPG Claimants' additional insured claims therefore fail as a matter of law.[154]

### IV.    CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED** that Taylors' Motion for Summary Judgment[155] against TPG Claimants is **GRANTED.**

**IT IS FURTHER ORDERED** that Underwriters' Motion for Summary Judgment[156] against TPG Claimants is **GRANTED.**

**IT IS FURTHER ORDERED** that TPG Claimants' contractual defense and indemnity, additional insured, and breach of contract claims against Taylors and TPG Claimants' breach of contract claim against Underwriters are **DISMISSED.**

New Orleans, Louisiana, July 31, 2026.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[154] Considering the Court's findings that TPG Claimants are not third-party beneficiaries of the MSA and that Endorsement No. 6 was not effective at the time of the April 10, 2024 allision, the Court need not resolve the issue of whether the LOAIA's prohibition on knock for knock provisions applies to the MSA in light of the settlement reached at trial.
[155] R. Doc. 145.
[156] R. Doc. 148.