**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: IN THE MATTER OF TEXAS
PETROLEUM INVESTMENT COMPANY

CIVIL ACTION

NO. 24-2344

SECTION: "D" (2)

ORDER AND REASONS

Before the Court is a Motion for Summary Judgment, filed by Petitioner Texas Petroleum Investment Company ("TPIC").[1] Claimants The Production Group, LLC and David Hayes ("TPG Claimants") oppose the Motion,[2] and TPIC has filed a Reply.[3]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **DENIES** TPIC's Motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[4]

This action for exoneration from or limitation of liability arises out of an April 10, 2024 allision involving the Vessel LA 9395[5] on the inland waters of Plaquemines Parish, Louisiana.[6] At all times pertinent, TPIC owned and operated South Pass 24

---

[1] R. Doc. 81.

[2] R. Doc. 85.

[3] R. Doc. 86. On May 17, 2026, the Court granted in part and denied in part TPIC's Motion for Summary Judgment. *See* R. Doc. 233. In that Order and Reasons, the Court explained that it did not address TPIC's argument that is entitled to summary judgment on TPG Claimants' contractual defense and indemnity claim asserted against it, as the "Court has determined that any determination as to the enforceability of the contractual indemnity provisions in an MSA is premature under the LOAIA, as there has not yet been a finding of liability as to any indemnitee." *Id.* at p. 18 n.99. The Court revisits TPIC's argument here and does not revisit any other aspect of the Motion for Summary Judgment. *See* R. Doc. 81.

[4] In a previous Order and Reasons, the Court recited the factual and procedural background of this matter in detail. *See* R. Doc. 91. The Court therefore provides the factual and procedural background solely as relevant to the instant Motion.

[5] Vessel La 9395 is also referred to as the M/V SYDNEY. *See* R. Doc. 73-1 at p. 2. The Court will refer to it as the "Vessel" throughout this Order and Reasons.

[6] R. Doc. 73-1 at p. 2.

("SP-24"), a fixed oil and gas production platform located on the inland waters of Plaquemines Parish, Louisiana.[7] David Hayes, an employee of The Production Group, LLC,[8] and George Walcott, an employee of Taylors International Services, were assigned to work on SP-24.[9]

On the morning of the incident, David Hayes and George Walcott conducted a routine crew shift transfer.[10] David Hayes operated the Vessel – a small aluminum hull crew boat owned by TPIC – and departed from SP-24 to a dock in Venice, Louisiana.[11] George Walcott was one of the passengers in the Vessel.[12] During the voyage to Venice, the Vessel allided with a submerged obstruction in the water, allegedly causing injuries to George Walcott.[13]

At the time of the allision, TPIC and The Production Group, LLC were operating under a Master Services Agreement ("MSA") that was executed on June 1, 2019.[14] The MSA, in pertinent part, provides as follows:[15]

---

[7] R. Doc. 85-1 at p. 2. More specifically, TPIC's SP-24 is located on State Lease No. 1923 within Louisiana's territorial waters. *Id.* at p. 3.

[8] The Court has previously ruled on TPG Claimants' Moton for Partial Summary Judgment on Borrowed Servant Status. *See* R. Doc. 228. The Court's reference to Hayes as an employee of The Production Group in this Order is not intended to change the Court's ruling on Hayes' borrowed servant status.

[9] R. Doc. 81-2 at p. 1; R. Doc. 85 at p. 2; R. Doc. 85-1 at p. 3.

[10] R. Doc. 85 at p. 2.

[11] R. Doc. 85 at p. 2; R. Doc. 85-1 at p. 3.

[12] R. Doc. 85 at p. 2. The Court acknowledges that there were other passengers in the Vessel at the time of the accident. *Id.* at pp. 2–3. The Court only references George Walcott for the sake of convenience.

[13] R. Doc. 85 at p. 3.

[14] R. Doc. 81-4 at p. 2; R. Doc. 12-1.

[15] It is undisputed that "TPG's predecessor, E&H Production Group, LLC, entered into the MSA with TPIC on June 1, 2019[]" and that "E&H Production Group, LLC was subsequently acquired by TPG." R. Doc. 85-1 at p. 3. Therefore, the Court, when interpreting the MSA, substitutes ES&H Production Group, LLC with The Production Group, LLC.

Company: TEXAS PETROLEUM INVESTMENT COMPANY

. . . .

Contractor: ES&H PRODUCTION GROUP, LLC

. . . .

WHEREAS, Company is engaged in the business of exploration, development and operation of oil and gas wells for others, or for its own account, or is engaged in the production of oil and gas, and in the course of such operations regularly and customarily enters into contracts with independent contractors for performance of service thereto; and

. . . .

11.3 This Agreement shall be governed, construed and interpreted in accordance with the Laws of the State of Louisiana, Texas or Mississippi as determined by where the work is performed.[16]

On September 26, 2024, TPIC filed a Complaint for Exoneration from or Limitation of Liability in this Court.[17] Thereafter, on March 27, 2025, TPG Claimants filed an Amended Answer and Claim to Texas Petroleum Investment Company's Complaint for Exoneration from or Limitation of Liability, in which the TPG Claimants state as follows:

The TPG Parties aver that the injuries and damages alleged by George Walcott and Evelyn Walcott were not caused by the fault, negligence, acts, omissions or culpable conduct of the TPG Parties, but were caused, in whole or in part, by the faults, negligent acts, omissions or culpable conduct of Petitioner and/or their employees, agents, servants and/or other persons, for none of whom the TPG Parties are liable.

. . . .

---

[16] R. Doc. 12-1 at pp. 1, 10–11, 14.
[17] R. Doc. 1.

3

The TPG Parties further assert that they are entitled to contractual defense and indemnity from Petitioner pursuant to the master services agreement dated June 1, 2019 . . . .[18]

On April 3, 2025, TPIC filed an Answer to TPG Claimants' Amended Answer and Claim, whereby TPIC denied TPG Claimants' allegations of entitlement to contractual defense and indemnity and non-contractual indemnity and/or contribution under the MSA.[19]

TPIC filed the instant Motion for Summary Judgment on November 25, 2025.[20] TPIC, in pertinent part,[21] seeks summary judgment dismissing TPG Claimants' claims for contractual defense and indemnity pursuant to the MSA.[22] TPIC argues that TPG Claimants' claim for contractual defense and indemnity is prohibited under Louisiana law, specifically the Louisiana Oilfield Anti-Indemnity Act ("LOAIA").[23] TPIC contends that the LOAIA is applicable to the instant dispute because the MSA "is one involving the exploration and production of oil and gas from a fixed structure situated in the State of Louisiana."[24] No exception to the LOAIA applies, according to TPIC.[25] TPIC submits that The Production Group, LLC has not paid to be named an additional insured on TPIC's liability insurance policy, and "[a] review of the TPIC/TPG MSA reveals, there is no 'Marcel' and in fact no insuring provision

---

[18] R. Doc. 12 at p. 13.
[19] R. Doc. 13 at p. 4.
[20] R. Doc. 81.
[21] The Court has previously dismissed TPG Claimants' non-contractual indemnity and/or contribution claims in a previous Order and Reasons. *See* R. Doc. 233.
[22] R. Doc. 81-2 at p. 1.
[23] *Id.* at p. 3.
[24] *Id.* at p. 7.
[25] *Id.*

whatsoever in the MSA whereby TPG can be named an additional insured on TPIC's policy . . . ."[26]

TPG Claimants oppose the Motion, asserting that "the [M]otion fails for two independent reasons."[27] According to TPG Claimants:

> TPIC's motion is premature. Under *Meloy v. Conoco, Inc.,* and consistent with recent Eastern District of Louisiana decisions applying *Meloy*, an indemnity provision cannot be voided under LOAIA until the indemnitee's fault has been adjudicated. No such determination has been made here, and significant factual issues remain unresolved—including whether David Hayes was TPIC's borrowed servant at the time of the allision, a finding that would directly affect whose negligence, if any, is at issue. Until these factual matters are resolved, any LOAIA analysis is not ripe for summary judgment.[28]

Therefore, according to TPG Claimants, the instant Motion should be denied.[29]

TPIC, in Reply, asserts that TPG Claimants' defense of prematurity is no longer viable under recent Louisiana Supreme Court precedent.[30] Accordingly, TPIC reiterates that it is entitled to summary judgment.[31]

On May 17, 2026, the Court granted in part and denied in part TPIC's instant Motion for Summary Judgment, finding that "that any determination as to the enforceability of the contractual indemnity provisions in an MSA is premature under the LOAIA, as there has not yet been a finding of liability as to any indemnitee."[32] This matter then proceeded to a bench trial on May 18, 2026.[33] On the second day of

---

[26] *Id.*
[27] R. Doc. 85 at p. 1.
[28] *Id.* at pp. 1–2 (citing *Meloy v. Conoco*, *Inc.,* 504 So.2d 833 (La. 1987)).
[29] *Id.* at p. 2.
[30] *Id.* at p. 10.
[31] *Id.* at p. 10.
[32] R. Doc. 233 at p. 18 n.99.
[33] R. Doc. 236.

the bench trial, Counsel for George Walcott and Evelyn Walcott advised the Court that George Walcott and Evelyn Walcott dismissed all claims against all parties with prejudice in light of a settlement agreement.[34] The Court inquired with the parties with remaining claims in this matter regarding whether they desired to continue with the trial, and all parties agreed to submit their claims on the briefs previously submitted to the Court.[35] The Court therefore reconsiders TPIC's Motion for Summary Judgment in light of the settlement reached at trial.

Subsequently, on June 10, 2026, the assigned Magistrate Judge informed the Court that the remaining claims between TPIC, Underwriters, and Taylors have been amicably resolved.[36] Accordingly, only TPG Claimants have claims remaining in this matter—with claims asserted against TPIC, Taylors, and the Underwriters.[37] In this Order and Reasons, the Court only addresses TPG Claimants' claims against TPIC.[38] On June 12, 2026, the Court ordered supplemental briefing on the issue of whether TPG Claimants still have a viable claim for contractual defense and indemnity against TPIC under Louisiana law in light of the settlement agreements announced in this case.[39]

---

[34] R. Doc. 237.
[35] *Id.*
[36] R. Doc. 238 at p. 1.
[37] *See* R. Docs. 12 and 93.
[38] The Court addresses TPG Claimants' claims against Taylors and Underwriters in a separate Order and Reasons. *See* R. Doc. 261.
[39] R. Doc. 239 at p. 2.

6

In TPG Claimants' supplemental brief, TPG Claimants contend that their contractual defense and indemnity claim against TPIC remains viable.[40] In support, TPG Claimants advise that:

> TPG did not settle Plaintiffs' claims, pay settlement consideration, or foreclose adjudication of its own fault. Quite the opposite, Plaintiffs dismissed their claims against TPG with prejudice, and without receiving any compensation or consideration from TPG whatsoever. TPIC separately resolved Plaintiffs' claims against TPIC and Hayes, whom this Court had already determined was TPIC's borrowed servant. TPG's contractual claim against TPIC was not dismissed, released, or compromised.
>
> That posture distinguishes *Tanksley v. Gulf Oil Corp. Tanksley* bars recovery when the party seeking indemnity settles the underlying claims against itself and thereby prevents the no-fault determination required by *Meloy v. Conoco, Inc.* TPG did not do that. Under *Meloy*, *Melancon v. Amoco Production Co.,* and *American Home Assurance Co. v. Chevron, U.S.A., Inc.*, the Court may determine whether TPG was independently at fault or whether the claims against it were baseless. Because the record contains no finding of independent TPG fault and supports a finding that the claims against TPG were baseless, the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") does not bar TPG's contractual defense claim.[41]

TPG Claimants argue that the Walcotts' dismissal, with prejudice and without consideration, of all claims asserted against TPG Claimants operates as a *de facto* determination that TPG Claimants were not at fault for the April 10, 2024 allision.[42] TPG Claimants further contend that "[t]o the extent anything more is required, the Court can easily determine, on the existing record, that TPG was not independently

---

[40] R. Doc. 246. at p. 1.
[41] *Id.* at pp. 1–2 (citing *Meloy v. Conoco, Inc.*, 504 So. 2d 833 (La. 1987); *Tanksley v. Gulf Oil Corporation*, 848 F.2d 515 (5th Cir. 1988); *Melancon v. Amoco Production Co.*, 834 F.2d 1238 (5th Cir. 1988); *American Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265 (5th Cir. 2005)).
[42] *Id.* at p. 8.

at fault and that Plaintiffs' claims against TPG were baseless."[43] In support of their

assertion that the Court can determine TPG Claimants' absence of fault, TPG

Claimants provide as follows:

> Based on this Court's borrowed servant ruling, Plaintiffs could not impose liability on TPG based merely on Hayes's operation of the vessel. A borrowed servant becomes the employee of the borrowing employer and is treated as the servant of the borrowing employer. Because Hayes was TPIC's borrowed servant, any negligence by Hayes in operating the M/V SYDNEY is attributable to TPIC, not TPG. The only other theories against TPG were direct negligence theories, which required Plaintiffs to prove an independent duty owed by TPG, breach of that duty, and causation.[44]

According to TPG Claimants, any direct-negligence theories asserted against them fail

because:

> TPG did not own, operate, maintain, inspect, repair, equip, or control the M/V SYDNEY. TPG did not select the route, determine who would ride aboard, direct Hayes's speed, navigation, lookout, use of electronics, or maneuvering, or supervise the crew-change transit. TPG also had no supervisor manager, or other personnel stationed in the SP-24 field directing Hayes's work. Those facts do not support an independent duty, breach, or causal act by TPG.[45]

Thus, TPG Claimants ask the Court to find that its contractual defense and indemnity

claim against TPIC remains viable and that "TPIC owes TPG its defense costs on

account of the dismissal of all claims against TPG with prejudice but without

compensation."[46] TPG then requests "ten days to file its statement of recoverable fees

and costs, with supporting documentation and authorities."[47]

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at pp. 9–10.

[46] *Id.* at p. 10.

[47] *Id.*

TPIC has also filed a supplemental brief in this matter.[48] TPIC contends that the "overarching legal presence in this case is the Louisiana Oilfield Anti-Indemnity Act (LOAIA) . . . ."[49] According to TPIC, because the applicability of the LOAIA can only be determined after a trial on the merits, TPG Claimants' contractual defense and indemnity claims against TPIC are no longer viable as there has been no finding of fault on behalf of TPIC.[50] Nevertheless, TPIC acknowledges that there have been various cases addressing subsequent litigation in the LOAIA context where a settlement is reached prior to a finding of fault at trial.[51] According to TPIC, "none of those cases, and certainly not the Louisiana Supreme Court, have deviated from the core message of *Meloy,* which remains the same—no trial on the merits/no recovery."[52]

Moreover, TPIC notes that although the Court has previously determined that David Hayes was a borrowed employee of TPIC, the Louisiana Supreme Court has found that a lending employer can be solidarily liable for the torts of a borrowed employee under the "dual-employer" theory.[53] Pursuant to this "dual-employer" theory, TPIC argues that not only is TPIC liable for any tortious conduct of David Hayes, but The Production Group, LLC is also solidarily liable for any tortious conduct of David Hayes.[54]

---

[48] R. Doc. 248.

[49] *Id.* at p. 2.

[50] *Id.* at p. 3.

[51] *Id.*

[52] *Id.*

[53] *Id.* at p. 8 (citing *Morgan v. ABC Manufacturing*, 710 So. 2d 1077 (La. 1998)).

[54] *Id.*

With leave of Court, TPG Claimants filed a memorandum in reply.[55] Addressing its contractual defense and indemnity claims against TPIC, TPG Claimants argue that:

> TPIC overextends *Tanksley* far beyond its holding. *Meloy* requires a judicial determination of the indemnitee's fault or lack of fault before defense costs may be recovered; it does not create the categorical "no verdict, no recovery" rule TPIC proposes. *Tanksley* applied *Meloy* to a specific posture in which the party seeking indemnity settled the underlying claim against itself and thereby avoided trial on its own fault. TPG did not do that. TPG did not settle anything, did not contribute anything, did not provide any release, and did not control TPIC's settlement with Plaintiffs, Taylors, or Underwriters. Further, TPIC's repeated suggestion that there was "no trial on the merits" of TPG's fault is bizarre. TPG was present for the recent two-day bench trial, as were TPG witnesses that Plaintiffs subpoenaed. The fact that Plaintiffs elected not to call them and released them from their subpoenas does not mean TPG's fault was not on trial. The fact that Plaintiffs' marine liability expert did not even mention TPG, much less assign it fault, supports that TPG was not at fault. TPIC's and Plaintiffs' failure or inability to adduce evidence of TPG's fault when they had the opportunity does not mean the trial did not occur; it means the trial exonerated TPG.
>
> TPIC overextends *Morgan* in a different way. TPIC invokes *Morgan* to attribute Hayes's alleged fault to TPG despite the Court's borrowed servant ruling and the application of maritime law to the underlying tort claims. *Morgan* applied Louisiana respondeat superior principles under Civil Code article 2320. Critically, *Morgan* is not a maritime case, and it does not govern whether Hayes's alleged negligence is attributable to TPG after this Court's borrowed servant ruling. Louisiana law may govern the contracts at issue; it does not convert Plaintiffs' maritime tort claims into Louisiana tort claims. This case arises from a vessel allision on navigable waters. TPIC invoked admiralty and limitation jurisdiction, and the parties stipulated to this Court's maritime jurisdiction in the Pretrial Order. TPIC identifies no authority adopting *Morgan*'s dual-employer doctrine in a maritime case. To the contrary, *Energy XXI, GOM, LLC v. New Tech Engineering, L.P.*, recognized that, if maritime law applies, Louisiana's dual-employer doctrine does not.[56]

---

[55] R. Doc. 252.

[56] *Id.* at pp. 2–3 (citation modified).

Therefore, according to TPG Claimants, its claim for contractual defense and indemnity against TPIC remains viable under Louisiana law.[57]

Also with leave of Court, TPIC has filed a sur-reply.[58] TPIC takes issue with TPG Claimants' interpretation of Fifth Circuit and Louisiana Supreme Court caselaw, providing as follows:

> TPG contends that as *Morgan* is not a "maritime case" it has no relevance here. Quite the contrary. It is TPG who sought to and successfully had Mr. Hayes declared to be a borrowed servant of TPIC. It is that status which is the only foundational basis for TPG's claims for defense and indemnity in that it is that status TPG contends immunizes it from fault freeing it to assert its demand for *Meloy* indemnity. However, Mr. Hayes' identity as a borrowed servant of TPIC arose from his daily work activities on the TPIC fixed structure located in Louisiana. As both Federal and Louisiana law are in sync in what constitutes a borrowed servant, Mr. Hayes' status in that regard would be derived from the law of Louisiana. If Mr. Hayes is a Louisiana borrowed servant then, although any liability flowing through his conduct would be characterized as a maritime tort as to TPIC and TPG, TPIC suggests that insofar as addressing TPG's contractual claim against TPIC, which also flows through the Louisiana borrowed servant Mr. Hayes, his status, being founded in Louisiana State law, should also carry with it the Rule of *Morgan.* That rule declares that when you have both the borrowing, (TPIC) and lending (TPG) employers involved, liability is shared equally by both. Thus, for that reason alone, notwithstanding *Meloy* and *Tanksley,* TPG's claim is defeated through its sharing of liability for Mr. Hayes' conduct.[59]

Thus, according to TPIC, TPG Claimants' contractual defense and indemnity claim should be dismissed.[60]

---

[57] *Id.*

[58] R. Doc. 257.

[59] *Id.* at p. 3 (citation modified).

[60] *Id.*

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[61]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[62]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[63]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[64] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[65]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[66]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[67]  The non-moving party can then defeat summary judgment by either submitting evidence

---

[61] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[62] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

[63] *Anderson*, 477 U.S. at 248.

[64] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[65] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[66] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[67] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[68] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[69] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[70]

## III.   ANALYSIS

TPIC asserts that TPG Claimants' contractual defense and indemnity claim against it is no longer viable, as there has not been a finding of liability as to the fault of TPIC.[71] TPG Claimants, in turn, assert that under Louisiana Supreme Court and United States Fifth Circuit jurisprudence, the settlements in this matter do not render their contractual defense and indemnity claim against TPIC invalid.[72] The Court agrees with TPG Claimants.

---

[68] *Id.* at 1265.
[69] *See Celotex*, 477 U.S. at 322-23.
[70] *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).
[71] R. Doc. 248.
[72] R. Docs. 246 and 252.

Louisiana law invalidates certain indemnity or "knock for knock" provisions found in oil and gas contracts.[73] The LOAIA, specifically La. R.S. § 9:2780, provides as follows:

> A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
>
> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.[74]

"The term 'agreement[]' . . . means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state . . . ."[75]

---

[73] A "knock for knock" provision is an "indemnity obligation in which each party is required to indemnify the other for claims brought by its own employees." *Skipper v. A&M Dockside Repair, Inc.*, Civil Action No. 18-6164, 2019 WL 3035447, at *3 (E.D. La. July 11, 2019)(Vance, J.)(citing 1 Admiralty & Mar. Law § 5:16 (6th ed. 2018)).

[74] La. R.S. §§ 9:2780(A), (B).

[75] La. R.S. § 9:2780(C).

In *Meloy v. Conoco, Inc.* the Louisiana Supreme Court held that, under the LOAIA:

> [T]he indemnitor's obligation for cost of defense cannot be determined until there has been a judicial finding that the indemnitee is liable or that the charges against it were baseless. Whether an oil company (indemnitee) is free from fault and thus outside the scope of the Act can only be determined after trial on the merits.[76]

"Accordingly, Louisiana law generally provides that the issue of indemnity is premature and non-justiciable until the underlying issue of liability is resolved and the defendant is cast in judgment."[77]

Nonetheless, in the LOAIA context, when a settlement occurs before a finding of liability, the Fifth Circuit's decisions in *Tanksley v. Gulf Oil Corporation*[78] and *American Home Assurance Company v. Chevron, USA, Inc.*[79] must be considered. Another Section of this Court has provided an instructive analysis of those two cases, providing the following:

> In *Tanksley*, Chevron sought indemnity from its contractor, Services, Equipment and Engineering, Inc. ("SEE"), related to injuries suffered by an SEE employee, Wayne Tanksley, while working on a Chevron platform. While Chevron's claim against SEE was pending appeal, Chevron and Tanksley agreed to a settlement without SEE. Despite settling Tanksley's claims, Chevron sought trial on its fault in order to prove its lack of liability and thereby qualify for indemnification from SEE under the LOIA.[80] The Fifth Circuit determined Chevron was not entitled to an adjudication of its fault because it voluntarily foreclosed such a determination by settling with Tanksley. Without a finding that

---

[76] *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987).

[77] *Lexington Ins. Co. v. St. Bernard Parish Government*, 548 Fed. Appx. 176, 180 (5th Cir. 2013)(citing *Meloy*, 504 So. 2d at 839; *Mossy Motors, Inc. v. Cameras Am.,* 898 So.2d 602, 607 (La. Ct. App. 4th Cir. 2005)).

[78] 848 F.2d 515 (5th Cir. 1988).

[79] 400 F.3d 265 (5th Cir. 2005).

[80] That court referred to the Louisiana Oilfield Anti-Indemnity Act as LOIA.  This Court refers to the Act as LOAIA.

Chevron was free from fault, the LOIA nullified Chevron's indemnification rights.

. . . .

In *American Home [Assurance] Company v. Chevron, USA, Inc.*, the Fifth Circuit again considered the LOIA's effect after a settlement. But instead of a settlement between the indemnitee and the underlying plaintiff, as in *Tanksley*, the settlement in *American Home Insurance Company* was between the indemnitor oilfield contractor (M-I) and the underlying plaintiff (Blackmon) after M-I agreed to assume the defense of the indemnitee oil companies (Chevron and Halliburton). Following settlement between M-I's insurance company (AIG) and Blackmon, AIG sued Chevron and Halliburton to recover its expenditures. The district court ruled in favor of Chevron and Halliburton at summary judgment, reasoning that the LOIA did not void the indemnity provisions between the oil companies and M-I because the LOIA only intervenes to nullify an indemnification provision when the indemnitee is adjudicated at fault.

On appeal, the Fifth Circuit instead found that, for the LOIA to have the protection legislatively intended, the contractor must be afforded an opportunity to demonstrate that the indemnity agreements invoked by the oil companies to defeat the contractor's reimbursement claim are void under the Act because of the negligence or fault of the oil companies. Thus, the Fifth Circuit found, the district court should have permitted further litigation between AIG and the oil companies to determine if the oil companies were at fault and, consequently, whether the LOIA voided the indemnity provisions.[81]

Neither *Tanksley* nor *American Home Assurance Company* addresses the precise scenario before this Court: where an indemnitee (i.e., TPIC) settles with Plaintiffs (i.e., George Walcott and Evelyn Walcott) in the midst of trial, the remaining parties are offered the opportunity to continue with the trial but each agree to proceed on the briefs and record evidence, and then the contractor (i.e., The Production Group, LLC) seeks to enforce its contractual defense and indemnity claims against the indemnitee

---

[81] *Matter of Offshore Oil Services, Inc.*, Civil Action No. 21-1522, 2024 WL 4626206, at *2 (E.D. La. Oct. 30, 2024)(Papillion, J.)(citation modified).

(i.e., TPIC). But *Tanksley* is close. The only difference between *Tanksley* and the instant matter is the party seeking to enforce its indemnification rights. Similar to Chevron in *Tanksley*, TPIC has settled with the Plaintiffs. Unlike Chevron in *Tanksley*, however, TPIC does not seek indemnification from its contractor, The Production Group, LLC. Instead, it is the contractor (i.e., The Production Group, LLC) that seeks to enforce its indemnification rights against TPIC.

Despite the slight difference in this matter's posture, the Court still finds the instant matter falls under *Tanksley*'s purview.[82] The Fifth Circuit has explained the rationale of *Tanksley*:

> In *Tanksley*, this court held that an oil company cannot invoke an indemnification agreement with a contractor after settling an injured worker's claims because, by settling, the oil company foreclosed its opportunity to have a court determine that it was free from fault. The *Tanksley* holding furthers the aims of the LOAIA by protecting contractors from having to litigate an oil company's fault when the oil company had an opportunity to adjudicate the matter in the previous underlying action. Furthermore, because the indemnification provision at issue in *Tanksley* was declared null and void, there was no risk that the oil company could shift liability for its own negligence to the contractor. Thus, *Tanksley* is consistent with the object of the LOAIA . . . .[83]

Considering the above rationale of *Tanksley*, the Court finds that TPG Claimants' contractual defense and indemnity claim against TPIC remains viable despite the settlement agreements in this matter.

---

[82] *See Matter of Offshore Oil Services, Inc.*, 2024 WL 4626206, at *3 ("Thus, because the facts of this case align with those in *Tanksley* and are distinguishable from the settlement arrangement in *American Home*, this Court must follow *Tanksley*.").
[83] *American Home Assur. Co.*, 400 F.3d at 270 (citing *Tanksley*, 848 F.2d 515).

The Court determines that this finding is appropriate for several reasons. As an initial matter, "TPG did not settle Plaintiffs' claims, pay settlement consideration, or foreclose adjudication of its own fault."[84] Second, this Court's holding furthers the purpose of the LOAIA. As explained by the Fifth Circuit:

> The LOAIA was also enacted to protect oilfield workers . . . . It is universally known that the exploration for oil, gas and other minerals is extremely hazardous. Any action which might have a substantial effect on safety in that setting finds an instant audience. So it is with the Oilfield Indemnity Act of 1981. It prevents one from requiring another to indemnify one's own negligence or fault. If a person is permitted to insulate himself from his own negligence, the motivation to institute and enforce safe work practices and conditions is at best attenuated. One who remains liable and exposed for his own negligence is more likely to act with care. This Act is a rational attempt to improve oilfield safety.[85]

If this Court were to find, by virtue of TPIC's settlement with Plaintiffs, that TPG Claimants no longer had a viable contractual defense and indemnity claim against TPIC, the fundamental purpose of the LOAIA would be frustrated. TPIC, along with other oil and gas companies, would be free to settle with Plaintiffs and leave contractors (i.e., The Production Group, LLC) without any recourse, bearing the costs of litigation. In essence, this would allow oil and gas companies to avoid their contractual obligations to independent contractors by virtue of settling with third parties, such as Plaintiffs.

Such "end run around the LOAIA"[86] is further exacerbated by the Court's prior finding that David Hayes, a payroll employee of The Production Group, LLC, was a

---

[84] R. Doc. 246 at p. 1.
[85] *American Home Assur. Co.*, 400 F.3d at 269 (citation modified).
[86] *Id.* at 270.

borrowed servant of TPIC.[87] Pursuant to the Court's prior ruling, TPIC is liable for any tortious conduct attributable to David Hayes. Allowing TPIC to avoid its contractual defense and indemnity obligations to The Production Group, LLC, based on the fault of TPIC's own borrowed employee, would allow TPIC to "insulate [itself] from [its] own negligence,"[88] thereby reducing the oil and gas company's "motivation to institute and enforce safe work practices and conditions . . . ."[89] Such a result would be inconsistent with the LOAIA. The Court therefore finds that TPG Claimants' contractual defense and indemnity claim against TPIC is still viable under the LOAIA.

Having found that TPG Claimants' contractual defense and indemnity claim against TPIC remains viable and noting that TPIC is liable for the tortious conduct of David Hayes as its "borrowed employee," the Court next addresses whether The Production Group, LLC can be held liable for the tortious conduct of David Hayes, its payroll employee.[90] In a previous Order and Reasons, the Court found that Louisiana law applies to the instant MSA regardless of whether the MSA was classified as non-maritime or maritime.[91] Accordingly, the Court applies Louisiana law.

In *Morgan v. ABC Manufacturer*, the Louisiana Supreme Court established the "dual employer" doctrine, finding that "where a general employer is engaged in the business of hiring out its employees under the supervision of another employer,

---

[87] R. Doc. 228.

[88] *American Home Assur. Co.*, 400 F.3d at 269 (citation modified).

[89] *Id.* (citation modified).

[90] For the remainder of the Order and Reasons, the Court intentionally distinguishes between The Production Group, LLC and David Hayes as opposed to "TPG Claimants."

[91] *See* R. Doc. 233.

the general employer remains liable for the torts of the 'borrowed' employees."[92]

"Under this doctrine, the general employer remains liable for its employee's torts even if it does not control the employee's work because its business is furthered when it loans out its employee."[93] As explained by another Section of this Court:

> *Morgan* held that when loaned employees are the temporary services provider's stock in trade, the general employer will remain liable for the torts of the borrowed employee. Liability remains with the general employer when a significant feature of its business is to pass control of the details of the work to its customers and it retains ultimate and overriding authority over its loaned workers. When both employers contemporaneously control and benefit from the loaned worker's liability, both will be held liable under the Dual employer doctrine.[94]

Here, the record clearly establishes that The Production Group, LLC is a payroll staffing company that is engaged in hiring out its employees under the supervision of another employer.[95] Indeed, a significant feature of The Production Group, LLC's business is to pass control of the supervision of its payroll employees to its customers, in this case, TPIC.[96] Accordingly, because the record establishes that The Production Group, LLC and TPIC contemporaneously benefited from David Hayes' assignment to SP-24, the Court finds that both The Production Group, LLC and TPIC can be liable for the negligence of David Hayes in this matter.

---

[92] *Morgan v. ABC Manufacturer*, 710 So.2d 1077, 1078 (La. 1998).

[93] *Parkman v. W&T Offshore, Inc.*, 675 F.Supp.3d 684, 697 (M.D. La. 2023)(citing *Morgan*, 710 So.2d at 1083).

[94] *Delozier v. S2 Energy Operating, LLC*, 498 F.Supp.3d 884, 895 (E.D. La. 2020)(Morgan, J.)(citation modified).

[95] *See generally*, R. Doc. 228; *see also* R. Doc. 222 at p. 2 ("TPG is a staffing company that supplied production operators, including Hayes, to TPIC.").

[96] *See* R. Doc. 222 at p. 2.

To the extent that The Production Group, LLC relies on *Energy XXI, GoM, LLC v. New Tech Engineering, L.P.*[97] for the proposition that "if maritime law applies, Louisiana's dual-employer doctrine does not[,]" the Court is unpersuaded due to the distinguishable nature of *Energy XXI, GoM, LLC.*[98] In that case, that court determined that the pertinent Master Service Agreement was a maritime contract, and therefore, federal maritime law governed the agreement.[99] Here, as noted above, the Court has determined that Louisiana law applies to the instant MSA regardless of whether the MSA was classified as non-maritime or maritime.[100] To be clear, however, "[t]he analysis for determining whether general maritime law applies to the Plaintiffs' tort claim based on respondeat superior liability for [] alleged negligence is identical to the analysis for determining whether federal admiralty jurisdiction exists over the claim."[101] Because "[i]njuries sustained by workers during transfers between a fixed platform and a vessel in navigable waters have been held to be neither potentially disruptive to maritime commerce nor substantially related to traditional maritime activity[,]" the MSA would not be classified as maritime in nature.[102]

---

[97] 787 F.Supp.2d 590 (S.D. Tex. Apr. 15, 2011).

[98] R. Doc. 252 at p. 3 (citing *Energy XXI, GoM, LLC*, 787 F.Supp.2d at 620–21).

[99] *Energy XXI, GoM, LLC*, 787 F.Supp.2d at 605 ("[T]he court concludes that the contract at issue is a maritime contract. Thus, federal maritime law applies . . . .").

[100] *See* R. Doc. 233.

[101] *Delozier*, 498 F.Supp.3d at 895 (citing *Hamm v. Island Operating Co., Inc.*, 450 Fed.Appx. 365, 368 (5th Cir. 2011)).

[102] *Id.* (citing *Hufnagel v. Omega Serv. Industries, Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *Exploration & Production, Inc.*, 308 F.Supp.3d 878, 890 (E.D. La. 2018)). Notably, this finding does not deprive this Court of subject matter jurisdiction. *See, e.g., Recar v. CNG Producing Co.*, 853 F.2d 367, 370 (5th Cir. 1988)(finding that the Outer Continental Shelf Lands Act can "invest[] [a] district court with original federal question jurisdiction.").

Accordingly, insofar as TPG Claimants assert that the "dual-employer" doctrine is inapplicable based on *Energy XXI, GoM, LLC*, the Court disagrees as general maritime law does not govern the MSA. Instead, the Court has determined that Louisiana law applies either through the Outer Continental Shelf Lands Act or from Book IV of the Louisiana Civil Code for the reasons set forth in its May 17, 2026 Order and Reasons.[103] This Court agrees with another Section of this court in a nearly identical scenario which found that Louisiana's "dual-employer" doctrine applies.[104] This Court finds similarly.

### IV. CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED** that TPIC's Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that TPIC and TPG Claimants confer among themselves to determine whether the parties are able to reach a stipulation as to the allocation of fault between the two parties. TPIC and TPG Claimants shall advise the Court whether or not a stipulation as to the allocation of fault between the parties has been reached **on or before August 14, 2026.** If the parties are able to reach such a stipulation, they are to file the stipulation into the record by the above date. If the parties are unable to reach an agreement or stipulation as to the allocation of fault,

---

[103] *See* R. Doc. 233.

[104] See *Delozier*, 498 F. Supp. 3d at 895 (finding that the accident at issue was not subject to admiralty jurisdiction and that Louisiana's "dual-employer" doctrine applies in a case involving injuries to a crew boat operator sustained while the operator transferred from a crew boat to a fixed drilling platform).

they are to notify the Court by sending an email to efile-Vitter@laed.uscourts.gov by the above date.  If the Court is advised by the parties that they were unable to agree to a stipulation, the Court will determine the percentage of fault between TPIC and TPG Claimants based on the record and the evidence presented at trial.

New Orleans, Louisiana, July 31, 2026.

**WENDY B. VITTER**
**United States District Judge**